## OPPER *v.* UNITED STATES.

No. 49.   Argued October 22, 1954.—Decided December 6, 1954.

*Frederick Bernays Wiener* argued the cause for petitioner.   With him on the brief was *John M. Kelley, Jr.*

*John F. Davis* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney* and *J. F. Bishop.*

MR. JUSTICE REED delivered the opinion of the Court.

Petitioner seeks review of a conviction under charges that he violated 18 U. S. C. § 281, a section which punishes employees of the United States who receive outside compensation for any services to be rendered in any matter before a federal department or agency in which the United States is a party. Petitioner was not himself an employee but was charged with inducing a federal employee to accept compensation for such services through conspiring with him for that purpose. Such inducement violates 18 U. S. C. §§ 2 and 281. The sections are set out in the margin.[1]

Count 1 of the indictment charged, in substance, that on or about October 1, 1950, Hollifield, an employee of the United States, agreed to receive $1,750 from the petitioner for services to be rendered by Hollifield in regard to purchase requests in which the United States had a

---

[1] 18 U. S. C. § 281:

"Whoever, being . . . [an] officer or employee of the United States or any department or agency thereof, directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party or directly or indirectly interested, before any department, agency, court martial, officer, or any civil, military, or naval commission, shall be fined not more than $10,000 or imprisoned not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States."

*Id.,* § 2:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

direct interest. The services consisted of Hollifield's recommending approval and procurement by the Department of the Air Force of certain types of sun goggles and ski goggles which were to be used in Air Force survival kits. Count 4 charged receipt by Hollifield of $200 on or about August 5, 1951. Each of these two counts charged that petitioner aided, abetted, induced and procured Hollifield to unlawfully receive the compensation.

The fifth count charged a conspiracy between Hollifield and the petitioner from October 1, 1950, until September 26, 1951, to perform the unlawful acts alleged. Convictions on other counts were reversed.

Hollifield and the petitioner were tried jointly after the petitioner's motion for severance was denied. The jury found petitioner guilty on all counts and sentence was duly imposed. On appeal the Court of Appeals for the Sixth Circuit affirmed the conviction as to the above counts now before us. 211 F. 2d 719.

Certiorari was granted, 347 U. S. 1010, because of asserted variance or conflict between the legal conclusion reached in this case—that an extrajudicial, exculpatory statement of an accused, subsequent to the alleged crime, needs no corroboration—and other cases to the contrary.[2] This Court, in granting certiorari, limited review to the three issues raised by the petitioner which were considered important to the administration of criminal law and upon which there appeared to be some divergence of opinion among the Courts of Appeals.[3]

Hollifield was employed by the United States Air Force at the Aero Medical Laboratory at Wright Field,

---

[2] *Warszower* v. *United States*, 312 U. S. 342; *Calderon* v. *United States*, 207 F. 2d 377; *Pines* v. *United States*, 123 F. 2d 825; *Gulotta* v. *United States*, 113 F. 2d 683.

[3] The three questions as set out by the petitioner upon which certiorari was granted are: "3. Whether, where an admission is made to law enforcement officers after the date of the acts charged as crimes,

Dayton, Ohio. His job entailed, among other things, preparing the specifications of survival kits and determining whether goods submitted for those kits, including goggles, complied with the specifications. Petitioner resided in Chicago and was a subcontractor on various projects for equipping these kits. The petitioner supplied certain goggles to a prime contractor who submitted them for approval for use in the kits. The goggles were rejected on January 23, 1951, because of "marked deviations" from applicable specifications. A short time thereafter Hollifield arranged a conference with the project engineer who had made the rejection. At the conference Hollifield, accompanied by the petitioner, strongly urged acceptance of petitioner's goggles. It was concluded that Hollifield should prepare a written memorandum of his reasons for acceptance. A written memorandum dated January 25, 1951, was prepared.[4] Thereafter reconsideration was granted and on February 3, 1951, use of petitioner's goggles was recommended.

The Government further established by various records that on April 13, 1951, a long-distance call was made from Hollifield's residence in Dayton to petitioner in Chicago; that petitioner on April 16, 1951, cashed a check for $1,000, which check was dated April 13, 1951; and that a round-trip airline ticket was issued in Hollifield's name

---

it is to be so far treated as a confession that, in the absence of corroboration, it is inadmissible.

"4. Whether a conviction can be sustained where there is, apart from an admission made to law enforcement officers after the date of the acts charged as crimes, no proof of the *corpus delicti.*

"5. Whether, in convicting petitioner the jury, and in sustaining his conviction the court below, in fact admitted, as against him, statements of his co-defendant which, as a matter of law, were not competent evidence against him." 347 U. S. 1010.

[4] The memorandum, although signed by another, bore Hollifield's initials and embodied the reasons he had orally urged at the conference.

for April 14, 1951, flights from Dayton to Chicago and return.

The evidence of the Government thus far summarized was established by independent proof. The remainder of the Government's case depended upon a written statement submitted by the petitioner to the Federal Bureau of Investigation and various oral statements made by the petitioner to the FBI in several interviews.

The substance of these statements was that the petitioner had first met Hollifield in October 1950, and had seen him some fifteen times thereafter at Wright Field and in Chicago and that he had discussed the rejection of the goggles with Hollifield. He further stated that Hollifield, pursuant to an earlier phone call, came to his office in Chicago on Saturday, April 14, 1951, and he had handed Hollifield $1,000 which he had taken from cash he had at home and which cash he had replenished on Monday, April 16, 1951, by cashing a check dated April 13, 1951, in that amount. Petitioner also admitted giving Hollifield another $200 some two weeks later.

In both his oral and written statements petitioner insisted that he had never requested anything of Hollifield in regard to the goggles; that the money was strictly a loan to Hollifield based upon Hollifield's request to him that he needed money in regard to a mortgage on his home; that no security was given for the loan; that he had no receipt or agreement for interest; that he had no personal knowledge as to whether Hollifield owned a home or not; and that none of the money had been repaid. Petitioner consistently and specifically denied any guilt of the offense charged.

The petitioner makes no claim that any of the extra-judicial statements were anything but voluntary. In fact the record discloses that petitioner was cooperative with the FBI in furnishing information and that petitioner had ample opportunity to consult counsel in reference to the

FBI interviews and statements he made. Petitioner's prime contention is that his statements made after the date of the offense charged are so analogous to a confession that the same rules applicable to confessions must be applied and that if such rules are applied the conviction cannot stand.

*First.* It is petitioner's contention that where extrajudicial admissions that point to guilt are made by the accused, after the date of the acts charged as crime, testimony by witnesses other than the accused as to such oral or written admissions cannot be accepted as evidence without corroboration of the facts stated. That conclusion derives from petitioner's position that admissions of essential facts to prove a crime or admissions of some of its elements are so analogous to confessions of guilt that the same rule as to corroboration should be applied.

In the United States our concept of justice that finds no man guilty until proven has led our state and federal courts generally to refuse conviction on testimony concerning confessions of the accused not made by him at the trial of his case. Wigmore, Evidence (3d ed.), § 2071. See *Warszower* v. *United States,* 312 U. S. 342, 345, note 2. We have gone further in that direction than has the common law of England. There the courts have been hesitant to lay down a rule that an uncorroborated extrajudicial confession may not send an accused to prison or to death.[5] In our country the doubt persists that the zeal of the agencies of prosecution to protect the peace, the self-interest of the accomplice, the maliciousness of an

---

[5] In some cases a person may be convicted on his own confession without any corroborating evidence. 9 Halsbury's Laws of England (2d ed.) § 291, p. 207; § 268, p. 183, note g; I Phillipps and Arnold, Evidence (5th Am. ed.), p. 441. In manslaughter this conclusion is cautiously applied. *Regina* v. *Burton,* Dearsly's Crown Cases (1852–1856) 282. Proof of the *corpus delicti* is required. Halsbury, *supra,* § 768; *R.* v. *Davidson,* 25 Cr. App. R. 21.

enemy or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession. Admissions, retold at a trial, are much like hearsay, that is, statements not made at the pending trial. They had neither the compulsion of the oath nor the test of cross-examination.[6] They are competent as an admission against interest.

The admissions detailed above establish an acquaintance between petitioner and the employee, and a motive but not a purpose to have the federal employee agree to receive prohibited compensation for the services. More importantly they establish the receipt of money by the employee around the time of the alleged inducement by conspiracy to secure the employee's services before a federal agency concerning a contract in which the United States was interested. While the oral and verbal statements were not confessions of guilt, they were admissions of fact essential to prove the charge against petitioner and indeed of an element of the crime, inducement to receive the prohibited compensation or an illegal acceptance of a promise to pay.

In *Warszower* v. *United States,* 312 U. S. 342, 348, we held that although the only proof of an essential element of making a false statement was admissions to the contrary prior to the crime charged, sufficient to convict if found true, such an admission would take the case to the jury. We said such admissions "contain none of the inherent weaknesses of confessions or admissions after the fact." We think that an accused's admissions of essential facts or elements of the crime, subsequent to the crime, are of the same character as confessions and that corroboration should be required. See I Greenleaf, Evi-

---

[6] See American Law Institute Model Code of Evidence, adopted May 15, 1942, Foreword, Professor Edmund M. Morgan, 36, Rule 501; Wigmore, Evidence (3d ed.), § 1048.

dence (16th ed.), § 216; *Smith* v. *United States, post,* p. 147, decided today.

The need for corroboration extends beyond complete and conscious admission of guilt—a strict confession.[7] Facts admitted that are immaterial as to guilt or innocence need no discussion. But statements of the accused out of court that show essential elements of the crime, here payment of money, necessary to supplement an otherwise inadequate basis for a verdict of conviction, stand differently. Such admissions have the same possibilities for error as confessions. They, too, must be corroborated. See *Wilson* v. *United States,* 162 U. S. 613, 621.

It is urged by the Government, however, that such requirement should not apply to exculpatory statements, that is, those that explain actions rather than admit guilt. It is thought that exculpatory statements do not have behind them the pressure of coercion or the inducement of escaping the consequences of crime. This accords

---

[7] "A confession is *an acknowledgment in express words,* by the accused in a criminal case, *of the truth of the guilty fact charged* or *of some essential part of it."* Professor Wigmore excludes from the rule of corroboration exculpatory statements: *"Exculpatory statements,* denying guilt, cannot be confessions. This ought to be plain enough, if legal terms are to have any meaning and if the spirit of the general principle is to be obeyed." Also, "acknowledgments of subordinate facts colorless with reference to actual guilt."

"An acknowledgment of a *subordinate fact, not directly involving guilt,* or, in other words, not essential to the crime charged, is not a confession; because the supposed ground of untrustworthiness of confessions . . . is that a strong motive impels the accused to expose and declare his guilt as the price of purchasing immunity from present pain or subsequent punishment; and thus, by hypothesis, there must be some quality of guilt in the fact acknowledged. Confessions are thus only one species of admissions; and all other admissions than those which directly touch the fact of guilt are without the scope of the peculiar rules affecting the use of confessions." Wigmore, Evidence (3d ed.), § 821.

with Professor Wigmore's view. See note 7, *supra*. The statements here are exculpatory. See summary, *supra*. There is no opinion of this Court declaring or declining such an exception.[8] We conclude that exculpatory statements, however, may not differ from other admissions of incriminating facts. Given when the accused is under suspicion, they become questionable just as testimony by witnesses to other extrajudicial statements of the accused. They call for corroboration to the same extent as other statements.

*Second.* We next consider the extent of the corroboration of admissions necessary as a matter of law for a judgment of conviction. On this point the cases in the federal courts show divergence. One line of cases follows the rule set out in *Daeche* v. *United States*, 250 F. 566, that the corroborative evidence is sufficient if it touches the *corpus delicti* "in the sense of the injury against whose occurrence the law is directed," 250 F., at 571, and is of a type which goes to fortify the truthfulness of the confession.[9] Some cases would seem only to require the latter half of the *Daeche* rule; that is, proof of any corroborating circumstances is adequate which goes to fortify the truth of the confession or tends to prove facts embraced in the confession. There is no necessity that such proof touch the *corpus delicti* at all, though, of course, the facts of the admission plus the corroborating evidence must establish all elements of the crime.[10]

---

[8] *Bram* v. *United States*, 168 U. S. 532, an important case in the field of admissions, excludes such a statement on the ground of coercion, not exculpation. P. 562.

[9] *E. g., Jordan* v. *United States*, 60 F. 2d 4; *United States* v. *Kertess*, 139 F. 2d 923; *Forlini* v. *United States*, 12 F. 2d 631, 634.

[10] Accord, *United States* v. *Williams*, 1 Cliff. 5, 28 Fed. Cas., No. 16,707, pp. 636, 644; *Pearlman* v. *United States*, 10 F. 2d 460; *Wynkoop* v. *United States*, 22 F. 2d 799; *Bolland* v. *United States*, 238 F. 529, 530.

Other decisions tend to follow the rule enunciated in *Forte* v. *United States,* 68 App. D. C. 111, 115, 119, 94 F. 2d 236, 240, 244, that the corroboration must consist of substantial evidence, independent of the accused's extra-judicial statements, which tends to establish the whole of the *corpus delicti.*[11]

Whether the differences in quantum and type of independent proof are in principle or of expression is difficult to determine.   Each case has its own facts admitted and its own corroborative evidence, which leads to patent individualization of the opinions.   However, we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti.*   It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement.   Thus, the independent evidence serves a dual function.   It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. *Smith* v. *United States, post,* p. 147.   It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth.   Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt.

Turning to the instant case, it is clear that there was substantial independent evidence to establish directly the

---

[11] *Ercoli* v. *United States,* 76 U. S. App. D. C. 360, 361, 362, 363, 131 F. 2d 354, 355, 356, 357, following and reaffirming *Forte,* states the rule to be that corroboration which merely tends to support the confession is insufficient, as it must also embrace substantial evidence touching and tending to prove each of the main elements or constituent parts of the *corpus delicti.*   Also following this rule, *e. g., Pines* v. *United States,* 123 F. 2d 825; *Ryan* v. *United States,* 99 F. 2d 864; *United States* v. *Fenwick,* 177 F. 2d 488.

truthfulness of petitioner's admission that he paid the
government employee money.[12]   But this direct corrob-
orative evidence tending to prove the truthfulness of peti-
tioner's statements would not establish a *corpus delicti*
of the offense charged.   Rather it tends to establish only
one element of the offense—payment of money.   The
Government therefore had to prove the other element of
the *corpus delicti*—rendering of services by the govern-
ment employee—entirely by independent evidence.[13]
This independent evidence of services and of facts within
the admissions seems adequate to constitute corroboration
of petitioner's extrajudicial admissions and also establish
the *corpus delicti*.   The jury was free therefore to con-
sider the admissions in connection with all the other evi-
dence in the case and to decide whether the guilt of the
petitioner had been established beyond a reasonable
doubt.   They found that it was and we feel that such
finding is supported by substantial evidence.

*Third.*   Petitioner's final complaint arises out of the fact
that the conspirators were tried jointly.   The petitioner
feels that the jury might have become confused and im-
properly considered statements of codefendant Hollifield
in reaching its verdict as to petitioner.   Other than this
general possibility of confusion, he points out nothing
specifically prejudicial resulting from the joint trial.
The fact that the Court of Appeals below reversed on two
counts because of lack of evidence independent of state-
ments of Hollifield is emphasized to bolster this claim of
error as to the remaining counts.

---

[12] (1) The long-distance call from Hollifield's home to petitioner's
home on April 13, 1951.   (2) Petitioner's $1,000 check dated April
13, 1951.   (3) The airline tickets in Hollifield's name for a flight
to Chicago on April 14, 1951.

[13] This was accomplished by introduction of substantially uncon-
troverted evidence of Hollifield's efforts in gaining acceptance by the
Government of petitioner's previously rejected goggles.

It was within the sound discretion of the trial judge as to whether the defendants should be tried together or severally and there is nothing in the record to indicate an abuse of such discretion when petitioner's motion for severance was overruled. The trial judge here made clear and repeated admonitions to the jury at appropriate times that Hollifield's incriminatory statements were not to be considered in establishing the guilt of the petitioner.[14] To say that the jury might have been confused amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict. Our theory of trial relies upon the ability of a jury to follow instructions. There is nothing in this record to call for reversal because of any confusion or injustice arising from the joint trial. The record contains substantial competent evidence upon which the jury could find petitioner guilty. The judgment is

*Affirmed.*

MR. JUSTICE FRANKFURTER concurs in the result.

MR. JUSTICE DOUGLAS, believing that *Forte* v. *United States,* 68 App. D. C. 111, 94 F. 2d 236, states the better rule on corroboration, would reverse the judgment below.

---

[14] Rule 14, Federal Rules of Criminal Procedure; *United States* v. *Ball,* 163 U. S. 662, 672; *Waldeck* v. *United States,* 2 F. 2d 243; *Olmstead* v. *United States,* 19 F. 2d 842; *Metcalf* v. *United States,* 195 F. 2d 213, 217.