Alcie **FLETCHER**, Appellant,

v.

UNITED **STATES** of America,
Appellee.

No. 19001.

United States Court of Appeals
Ninth Circuit.

June 24, 1964.

Alcie Fletcher, in pro. per.

Brockman Adams, U. S. Atty., and Ronald G. Neubauer, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before CHAMBERS, Chief Judge, and HAMLEY and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

In February, 1962, in the United States District Court for the Western District of Washington appellant was convicted after a jury trial of a violation of the narcotics laws and was sentenced to a term of imprisonment. His conviction was affirmed by the United States Court of Appeals, Ninth Circuit, in January, 1963, and his later application for a writ of certiorari was denied by the United States Supreme Court.

In June, 1963, he filed a petition (and later an amended petition) in the United States District Court for the Western District of Washington under 28 U.S.C. § 2255, asking that his sentence be set aside and he be released from custody. These petitions were denied without a hearing by the district court and thereafter appellant filed a timely appeal to this court from said denial. Jurisdiction here is based upon 28 U.S.C. § 1291.

The grounds of appellant's petition and amended petition are (1) that there were three jurors in his trial who had also served as jurors in another and unrelated criminal case against another defendant about three weeks prior to his trial, and that in this prior trial a witness had referred to appellant as a narcotics peddler; and (2) that the testimony of the informer in appellant's trial was inherently improbable and therefore the prosecuting attorney must have known of its claimed falsity.

As to the first point, the record shows that on February 1, 1962, a criminal case entitled United States v. Madison Wilson was heard in the same district court but before a different district judge. The defendant therein was

charged with a violation of the narcotics laws. There were among the twelve jurors who decided the *Wilson* case three jurors who on February 21, 1962, were members of the jury which convicted the appellant of a violation of the narcotics laws. During the *Wilson* case a government witness on cross-examination by Wilson's counsel was asked the questions and gave the answers which are set forth in the margin.[1] No other reference to appellant in the *Wilson* trial was shown. One of the two prosecutors in the *Wilson* case was also one of the prosecutors in appellant's case.

The record shows that in appellant's case members of the prospective jury panel were examined at length prior to their selection as jurors. We have set out in the margin a portion of this examination and certain details of that proceeding.[2]

---

1. "Q This lady that came up to Mr. Paul, you mentioned her name, in a blue Cadillac——
"A (Interposing) Sally Jo Pettikirk.
"Q Pettikirk?
"A Pettikirk.
"Q Who was in the car with her?
"A Alcie Fletcher.
"Q Do you know Mr. Fletcher?
"A Yes, I do.
"Q Do you know where he is now?
"MR. SMITH: Objection, your Honor. I think it is immaterial.
"THE COURT: It may have some possible bearing. Objection overruled.
"MR. OPENDACK: Thank you.
"A Yes, he is in the County Jail.
"Q He is a narcotics peddler, isn't he?
"A Yes.
"Q And this girl, I presume, is a friend of his?
"A Yes, she is associated with him."

2. "THE COURT: Very well, thank you. Will all of the jurors in the courtroom who have not been called please come forward inside the gate and fill up this one row of seats. Those that are left over can sit in the first row outside the gate.
"Now will the jurors in the jury box and all the jurors in the courtroom please stand, raise their right hands and be sworn to answer questions concerning your qualifications to sit as jurors in the case now on trial. (All prospective jurors in the courtroom were sworn by the clerk.)
"THE COURT: Ladies and gentlemen, the Court will now make statements and the Court will also ask questions of the prospective jurors now seated in the jury box. The Court asks that all jurors present in the courtroom pay very strict attention to the statements that the Court makes as well as the questions that the Court asks so that if you are called upon to replace any of the jurors now seated in the jury box you will be able to answer the questions without the Court having to repeat them.
"It is the Court's objective here to select a jury of twelve men and women who will listen to the evidence with an open mind, without passion or prejudice, and render a just and fair verdict insofar as it is humanly possible to do so.
"Now, in order to obtain a jury of twelve men and women who can enter upon the performance of their duties as jurors in this case and who will consider the evidence with an open mind and weigh it impartially the Court will ask certain questions, and they will assist both the Court and Counsel in determining whether you can sit as fair and impartial jurors here.
"Remember always that if you are accepted as a juror in this case you will become an officer of this Court, an officer of the judicial system of the United States, a system dedicated to the administration of justice fairly and impartially, and as such an officer you will be morally and legally committed to the faithful performance of your sworn duty.
"Now, it is in this spirit that the Court will ask you questions. It is possible that Counsel will also suggest questions to be put to you. We don't intend to pry unnecessarily into your private affairs. Our sole purpose is to weigh in our judgment your qualifications to serve as jurors, and the Court hopes you will consider each of those questions thoroughly as you answer them. The Court further hopes that you will fully understand that the objective of obtaining a fair and impartial juror is the reason and the purpose behind the questions that are asked you.
"In this case, ladies and gentlemen, the United States Attorney by Information charges the defendant Alcie Fletcher as follows: . . .
(The Information which generally charged that on July 13, 1961, appellant sold narcotic drugs in violation of 26 U. S.C. § 4705(a) was then read in detail to the jury.)
"THE COURT: Has any juror ever heard of this case before, from newspaper accounts or otherwise? (No response.)
"At this stage of this proceeding I would like to inform all of the prospective jurors

As shown by the record, the district judge thoroughly examined the jury upon its voir dire and thoroughly explained the proper attitude the jury

in the courtroom that no inference of guilt may be drawn from the fact that the defendant has been accused of a crime. An Information filed by the United States Attorney is just a formal method of accusing the defendant of crime. It is not any evidence whatsoever against the accused and it neither creates any presumption nor permits any inference of guilt.

"As. a matter of fact, as many of you may know from previous service, the law presumes every defendant to be innocent until he is proved guilty beyond a reasonable doubt. In a civil case, as many of you may know, the party seeking to recover need only prove his case by a preponderance of the evidence, but in a case such as this where the defendant is accused of a crime the government must establish his guilt beyond a reasonable doubt. And I want you to know also that the defendant as he sits here is presumed to be innocent. This presumption of innocence accompanies the defendant throughout the trial and remains with him constantly, even during your deliberations, until it may be overcome by evidence which satisfies you of his guilt beyond a reasonable doubt.

"Is there any prospective juror who would have difficulty following these basic principles of law? (No response.)

\*        \*        \*        \*        \*

"Will the United States Attorney please identify himself, both of you, to the jury?

"MR. NEUBAUER: I am Ron Neubauer, an Assistant United States Attorney.

"MR. DORSEY: I am David J. Dorsey, Assistant United States Attorney.

"THE COURT: Is any juror acquainted with Mr. Brockman Adams, the United States Attorney, or either of his assistants who have just identified themselves? Mr. ——

"JUROR LANG - MALCOLMSON: Malcolmson.

"THE COURT: Who do you know, sir?

"JUROR LANG - MALCOLMSON: I know Brock Adams, your Honor.

"THE COURT: Is there anything in that acquaintance that would in any way affect your judgment in this case?

"JUROR LANG - MALCOLMSON: I don't believe it would, your Honor.

"THE COURT: Despite that acquaintance you feel that you could be a fair and impartial juror in this case?

"JUROR LANG - MALCOLMSON: Yes, your Honor.

"THE COURT: Is there anyone else who indicated they knew any of government Counsel? (No response.)

"Mr. Burns, I wonder if you would identify yourself and your client, please.

"MR. BURNS: Yes. I am James D. Burns, attorney, of the Seattle Bar Association. And this is my client, Alcie Fletcher, the defendant in this case.

"THE COURT: Does any juror know Mr. Burns or Mr. Fletcher? I see no hand or other indication of acquaintance, so I assume there is none.

"Mr. Neubauer, I will ask you if you care to identify the witnesses that you expect to call in this case.

"MR. NEUBAUER: Your Honor, first the government will call Mr. William Gowans, a government chemist, to be followed by Mr. Caron Durel, a narcotics agent for the Bureau of Narcotics. Then William Freeman, who is also a narcotics agent, then James Stewart, a special employee of the government, and lastly Carroll Gibson, another narcotics agent.

"THE COURT: Are any of those witnesses now in the courtroom?

"MR. NEUBAUER: No, they are not, your Honor.

"THE COURT: They are not. Is any juror acquainted with any of the witnesses that the government has indicated they expect to call in this case? (No response.)

\*        \*        \*        \*        \*

"THE COURT: I will ask the prospective jurors whether any of you have any prejudice for or against a law enforcement officer. I take it none of you have.

"Do any of you hold views or opinions with respect to criminal cases generally or with respect to charges such as are involved in this case that would cause you to be prejudiced or in any way make it difficult for you as a juror to be fair and impartial both as to the government and as to the defendant? (No response.)

"How many of you have had previous jury experience? Hold your hands high enough so Counsel can see, please. Thank you very much.

"How many of you have had previous experience in a criminal case as distinguished from a civil case? Thank you.

"How many of you have had experience in a case involving narcotics? Thank you very much.

"As many of you have been instructed in previous cases, it is the province of the jury to weigh the evidence and determine the facts. It is the duty of the

should take. During this examination it was disclosed that some jurors had served in prior criminal cases and in narcotic cases. Counsel for defendant made no attempt to examine the jurors on this subject and he suggested no questions to be asked by the court thereon.

The few questions in the *Wilson* case referring to appellant were a minute part of a 280-page transcript of the proceedings therein. The reference to appellant therein, in any event, even if recalled by any of the jurors was somewhat similar to a statement in a newspaper which a juror may have read. It in no way compared to the positive detailed charge contained in the information that appellant had at a definite time and place sold narcotics and to the positive testimony of the government's witnesses as to the details of this sale.

The jury had been instructed to and agreed to try the appellant fairly and impartially. In its final charge to the jury, the court stated *inter alia*—

"The evidence in the case consists of the sworn testimony of the witnesses, all exhibits which have been received in evidence, all facts which have been admitted or stipulated, and all applicable presumptions stated in these instructions. You must disregard any statement made by any person on either side of this case as to what any testimony has been, unless borne out by your final recollection thereof. * * * You are to consider only the evidence in the case."

Court to instruct you as to the law applicable to the case. Is there any juror who would or could not accept and apply the law as given by the Court or follow the evidence as it is given to you during the course of the trial? (No response.)

"Does anyone know of any reason, whether referred to in examination or not, why he or she could not be fair and impartial to both parties? Does any juror feel that he or she simply cannot be a just and fair juror and should not serve in this case? (No response.)

"I am going to ask you another question here, and I want each of you to pay real close attention to it and give me a real conscientious answer.

"If you were either the plaintiff or the defendant in this case, would each of you be satisfied with a jury of twelve persons all of the same frame of mind as each of you now possesses? (Brief pause.) I take it you all would.

"The Court has no further questions. Does either Counsel desire to request the Court to ask any further questions or make any further inquiry?

"MR. NEUBAUER: The government has no such requests, your Honor.

"MR. BURNS: I believe you have covered it, your Honor.
        *        *        *        *        *
"Counsel, do you pass the jury now in the box for cause?

"MR. BURNS: The defendant will pass the jury for cause, your Honor.

"MR. NEUBAUER: The government passes the jury for cause, your Honor."
        *        *        *        *        *

Peremptory challenges were then exercised by the government and by appellant. Each juror called to replace those challenged was asked if such juror had heard the Court's previous statement and questions, and among other questions, each such juror was asked the substance of the following question:

"Do you know of any reason why you cannot be a just, fair and impartial juror in this case?"

None of said jurors answered in the affirmative to this last question.

After the government had exercised six challenges and the defendant eight challenges (appellant was entitled to ten challenges) another juror, Mr. Crothers, was called and examined. The following then occurred:

"THE COURT: Government's sixth and last peremptory challenge limited to Mr. Crothers.

"MR. NEUBAUER: No challenge, your Honor.

"THE COURT: Defendant's ninth peremptory challenge.

"MR. BURNS: If the Court please, I would ask, would you ask Mr. Crothers whether he had been on a previous criminal case? I don't recall.

"THE COURT: I will ask him. Have you sat on a previous criminal case as a juror, Mr. Crothers?

"JUROR CROTHERS: I have.

"THE COURT: You have. In this jury service?

"JUROR CROTHERS: Yes.

"MR. BURNS: I will then accept the panel as it is now constituted.

"THE COURT: Very well. The jury may stand and be sworn."

We think that the district judge in his statements clearly met the test laid down by this court in Hamer v. United States, 259 F.2d 274, 280 (9th Cir.1958), cert. denied, 359 U.S. 916, 79 S.Ct. 592, 3 L.Ed.2d 577 (1959), where we said

"We find the voir dire examination permitted and undertaken here by the trial judge was adequate and fair to insure defendant the unbiased selection of an impartial jury to which he was entitled. The trial court advised counsel that if he had any additional voir dire questions, he could request the court to ask them. No such request was made. When the court asked if there were anything further on the issue of challenges for cause, defendant's counsel states, 'Nothing further.' We hold the voir dire examination in this case was sufficient."

There is no showing that the jury falsified any answers. There is a mere speculation that they may have disregarded the clear instructions of the court. This is not sufficient. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

■ We should proceed on the basis that a jury will follow the court's instructions where these instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them. Paoli v. United States, 352 U.S. 232, 242, 77 S.Ct. 294, 1 L.Ed. 2d 278 (1957).

As stated by this court in affirming appellant's conviction, "the record reveals that there is an abundance of evidence to justify the conviction. Any other verdict would not have been realistic." Fletcher v. United States, 313 F.2d 137, 139 (9th Cir.), cert. denied, 374 U.S. 812, 83 S.Ct. 1704, 10 L.Ed.2d 1035 (1963).

■ We hold that no prejudice to the appellant has been shown.

■ The second contention of appellant that the testimony of the informer was inherently incredible is equally unsubstantial. He urges that a "drug addict is inherently a perjurer" and that therefore the government "knowingly used perjured testimony by introducing [the informer] as a former narcotic addict and a reliable informer who was promised nothing for his informing." The petition sets forth no statement of the informer that is shown to be untrue nor does it allege what perjured testimony the government knowingly used. The question of the credibility of the informer was a matter for the jury to determine. The defendant's contention that because the prosecutor knew that the informer had been a drug addict therefore he must have known that the informer was testifying falsely is not sufficient.

We hold that the examination of the files and records of the case conclusively shows that the appellant was entitled to no relief.

Judgment affirmed.

HAMLEY, Circuit Judge (concurring).

Had the information which came to the three jurors in the previous Wilson trial, to the effect that appellant Alcie Fletcher " * * * is a narcotics peddler. * * *," come from a witness who did not subsequently testify to the same effect in the Fletcher trial, I would feel that the failure of counsel for Fletcher to be advised of this occurrence deprived him, in the Fletcher trial, of the opportunity to exercise, effectively and intelligently, the peremptory challenges available to him under Rule 24(b), Federal Rules of Criminal Procedure. This in turn, in my view, would have constituted a denial of a fair trial, and hence a deprivation of due process of law guaranteed by the Fifth Amendment.

My view, under that hypothesis, would be unaffected by the fact that the voir dire examination was adequate in view of the facts then known; that the jurors answered truthfully to the questions on voir dire, none being of a kind which would necessarily call for a disclosure of the incident in the Wilson case; that no misconduct on the part of the Govern-

ment was shown; that no actual prejudice on the part of the three jurors was shown; or that counsel for Fletcher used only eight of his ten peremptory challenges.

But here the witness, Caron B. Durel, a federal narcotics agent, who testified in the Wilson case that Fletcher is a narcotics peddler, testified to similar effect in the Fletcher trial. Moreover, in the Fletcher trial Durel supported his appraisal of Fletcher with his eyewitness account of the actual narcotics transaction, involving a sale by Fletcher to one James Steward, upon which the prosecution of Fletcher was based.

In the light of this circumstance, I do not see how it can be said that the denial of Fletcher's right to remove the three jurors by peremptory challenge brought about by the undisclosed incident of the Wilson trial, affected the fairness of the Fletcher trial. Those three jurors who heard Durel make this statement in the Wilson trial twenty days previously, or any jurors who would have replaced them, heard or would have heard the same statement from the same witness at the Fletcher trial.