UNITED STATES of America

v.

Benny ONG, a/k/a Benny Eng, a/k/a
Hong Shew Ong, a/k/a Gai Shew Eng,
a/k/a "Uncle Seven", et al., Defendants.

No. 74 Cr. 1127.

United States District Court,
S. D. New York.

June 25, 1975.

Paul J. Curran, U. S. Atty. by Edward J. Kuriansky, New York City, for plaintiff.

Gilbert S. Rosenthal, New York City, for defendant Young.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By notice of motion dated March 11, 1975, defendant Young moves for an order dismissing Count One of the indictment, the conspiracy count, and for a separate trial, pursuant to Rule 14, F.R.Cr.P.

The indictment charges defendants with conspiracy [18 U.S.C. § 371] and bribery [18 U.S.C. § 201(b)] of United States Immigration and Naturalization Service investigators to induce the investigators not to search for illegal aliens at defendants' illegal gambling establishments. The enterprises of the conspirators were independently owned and operated, with the exception of one on Catherine Street which was owned jointly by defendants Wah and Young.

Two Immigration investigators were approached by defendant Ong in the Fall of 1973 with an offer of regular weekly payments to be made on behalf of himself and the other defendants. The investigators pretended to accept these bribes, and for approximately eight months, received payments from defendants Ong, Wah, Young and Hom. Counts Two through Ninety-Nine are substantive bribery counts, each count representing a payment said to have been made on a particular date by one or another of the defendants.

Through defendant Ong, Young met the two investigators and began paying them directly although defendants Ong and Wah knew the payments were being made.

Numerous tape recordings were made of conversations between the defendants and the investigators. Transcripts of these conversations were made available to the defendants. Defendant Young claims the tape recordings establish that no single overall conspiracy existed. [*Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)].

In *Kotteakos, supra,* defendants were convicted of a conspiracy to violate the National Housing Act, 12 U.S.C. §§ 1702, 1703, 1715, 1731. A single defendant, one Brown, assisted other defendants in the preparation and filing of fraudulent applications for loans to be insured by the Federal Housing Administration. The Court found at least eight separate conspiracies, rather than the single conspiracy charged, since there was nothing connecting the conspiracies except that defendant Brown prepared all the applications. There was no evidence that the members of one conspiracy knew the members of any other, or knew Brown was conspiring with any other group.

■ Properly, the *Kotteakos* doctrine has been given very limited application. Conspiracy convictions have been upheld when some members did not know each other, if the evidence showed the conspirators must have known, from the nature of the illegal activity, that the scheme depended on the efforts of a large number of participants. *United States v. Tramunti,* 513 F.2d 1087 (2d Cir. 1975); *United States v. Mallah,* 503 F.2d 971 (2d Cir. 1974).

■ Any one of the defendants in this case might have attempted to bribe an officer of the Immigration and Naturalization Service, and the nature of that activity standing alone would not necessarily suggest a conspiracy. However, on the basis of defendant Young's interpretation of the contents of the tapes, and the Government's representations as to what the investigators' testimony will be, this case is clearly distinguishable from *Kotteakos.* Defendants Young and Wah were partners in the Catherine Street gambling operation. Defendant Ong's initial offer to the investigators was from a group of operators of gambling houses, including defendant Young. Young and his co-defendants knew who was paying protection money to the investigators in their behalf. Ong had introduced

Young to the investigators. As was pointed out in *United States v. Cogan,* 266 F.Supp. 374, 377–78 (D.C.1967):

"The general rational [sic] of the concept of conspiracy it that ' * * * collective action toward an antisocial end involves a greater risk to society than individual action toward the same end.' Developments—Criminal Conspiracy, 72 Harv.L.Rev. 920, 923–24 (1959). Likewise, when more than two people participate in a bribery scheme, the risk to society is correspondingly increased. . . . [F]or example, if each of the eight Internal Revenue agents entered into the conspiratorial agreement and had knowledge of the participation by the others, they would probably be more confident in carrying forward their illegal acts, more likely to continue their illegal deportment and encouraged to rationalize their actions. Thus, to an increased degree their combined efforts become more emphatically inimical to the safety of the commonweal. It follows that the agreement itself carries a criminal stigma."

■ Defendant Young contends that because he and his co-defendants disliked and mistrusted each other, and Young insisted on dealing with the investigators without the intercession of Ong, there could have been no conspiracy. In addition, defendant argues that each defendant was interested only in protecting his own gambling business, that there was no joint enterprise in which all defendants took part and from which all of the defendants profited.

Proving there was a direct monetary reward to each defendant from the bribery conspiracy is not part of the Government's burden at trial. Nevertheless, it is obvious that constant raids by Immigration investigators of gambling houses serving the Chinatown area would be likely to interfere with the entire gambling business. All of

the defendants would profit from corruption of Immigration investigators, which would put a stop to the raids. For this reason, the fact that there may have been internecine struggles among the defendants does not disprove participation in an overall bribery scheme which had as its object the general welfare of their industry. The question presented is for the jury.

■ Defendant's motion for a severance is directed to the discretion of the Court [*Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954)], and should not be granted unless defendant demonstrates "that he will be prejudiced by a joint trial so that it would in effect be a denial of a fair trial altogether." *United States v. Wolfson,* 289 F.Supp. 903 (S.D.N.Y. 1968). In the absence of such a showing, defendants in a conspiracy case should be tried together, particularly when the evidence would be substantially the same at both trials. *United States v. Lebron,* 222 F.2d 531 (2d Cir. 1955), *cert. denied* 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774.

■ Defendant Young believes his co-defendants Ong and Wong will raise an entrapment defense. He suggests they (not the Government) will introduce evidence of bribery charges presently pending in the courts of the State of New York in connection with that defense. How such evidence could become admissible on co-defendants proffer of proof is not shown. Such admissions of similar criminal behavior (which a mere arrest is not), defendant urges, will prejudice his own defense. There is no merit to this argument, nor does it, alone, entitle the defendant to a separate trial as a matter of right [*United States v. Echeles,* 352 F.2d 892, 897 (7th Cir. 1965)], nor may the Court assume the jury would be unable or unwilling to consider such evidence for a limited purpose.

■ Defendant's further objection to being tried together with his co-defendants appears to be grounded on the prejudicial nature of the evidence the Government may introduce to prove the conspiracy charge. For example, defendant states that he will:

"be prejudiced upon a trial with the co-defendants ONG and WONG by a playing of the taped conversations had between ONG and WONG . . with Federal Agents . . . in view of their many derogatory remarks concerning the defendant YOUNG . . . ." (Affidavit of Gilbert S. Rosenthal, Esq., p. 6, sworn to March 10, 1975).

The tapes, the testimony of the investigators, and the statements and acts of Young's co-conspirators in furtherance of the conspiracy will all be admissible at a joint or a separate trial. A separate trial of defendant Young under this indictment would serve no purpose other than forcing the Government to try substantially the same case twice. Defendant has not shown that he will be unable to obtain a fair trial in a joint proceeding, and therefore, the defendant's "desire for a separate trial must yield to the public interest in avoiding unnecessary duplication and expense and in utilizing available facilities and personnel to best advantage toward assuring speedy trials for all of those accused." *United States v. Wallace,* 272 F.Supp. 838, 841 (S.D.N.Y. 1967).

Defendant's motion is in all respects denied.

So ordered.