917 F.2d 1305
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Edith TURNER, Defendant-Appellant.
 No. 89-2276.
 United States Court of Appeals, Sixth Circuit.
 Nov. 7, 1990.
 
 Before MERRITT, Chief Judge, NATHANIEL R. JONES, and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Edith Turner appeals her conviction on charges relating to the possession and distribution of cocaine. She also appeals the district court's refusal to accept her guilty plea. For the reasons set forth below, we affirm.
 
 I.
 
 2
 At approximately 5:00 p.m. on May 24, 1989, agents from the Drug Enforcement Administration and Immigration and Naturalization Service executed a search warrant at 3574 Tillman, the residence of Turner and Rolando Arango Reynaldo. Turner was inside the house when the agents entered to conduct the search. After being advised of her Miranda rights, Turner was asked where the "dope" was. She responded, "It's upstairs. I'll have to show you. You'll never find it." J.App. 68.
 
 
 3
 Agents took Turner upstairs. Turner directed Special Agent Mark Thomas to a closet and informed him, "It's behind a board, a loose board against the side. You have to pull it down and it's inside there." J.App. 69. Thomas looked behind the board and found a small purse containing two bags of cocaine weighing 123.91 grams. In the upstairs area, agents also found four scales of the type used in drug trafficking. Turner also lead agents to her bedroom where a loaded sawed-off shotgun was leaning against the wall and a loaded derringer was found on a dresser.
 
 
 4
 Turner was questioned at the scene by Thomas. She admitted to dealing in small amounts of cocaine, but said her boyfriend Reynaldo dealt in greater amounts. J.App. 70-74. She said she usually had about five customers a day and sold "eight balls", or an eighth of an ounce of cocaine, for $100.00 and up, and that she sold ounces for $700.00. Id. at 71-72. She also told Agent Thomas some information regarding her sources and customers. Id. at 72-75.
 
 
 5
 At trial, Thomas testified that in his opinion the amount of cocaine found in the small purse in Turner's residence was more than a consumer would have. He stated that it was an amount typically associated with someone who deals drugs. J.App. 83-84.
 
 
 6
 A federal grand jury returned a three count indictment on June 7, 1989 charging conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 846; possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1); and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c).
 
 
 7
 Trial was scheduled to begin on August 7, 1989. On the day of the trial Turner asked to plead guilty to Counts I and III pursuant to a Fed.R.Crim.P. 11 plea agreement. After asking Turner a number of questions regarding her plea, the court determined that she did not wish to plead guilty and rejected her plea. A trial was held on August 8th and 10th and the jury convicted Turner on all counts. She received a sentence of 24 months on Counts I and II to be served concurrently and five years on Count III which was to be served consecutively to the sentence on the other counts. She filed this appeal on November 13, 1989.
 
 II.
 
 8
 Turner first contends that the trial court erred in refusing to accept her plea of guilty to Counts I and III of the indictment. A trial judge "may reject a plea in exercise of sound judicial discretion." Santobello v. New York, 404 U.S. 257, 262 (1971). See also United States v. Severino, 800 F.2d 42, 45 (2d Cir.1986), cert. denied, 479 U.S. 1056 (1987). Therefore, we review the trial court's refusal to accept a defendant's guilty plea for abuse of discretion. Turner argues that while the trial court has discretion to approve or reject a guilty plea, that discretion is not unfettered. In United States v. Delegal, the Seventh Circuit stated that, "a defendant is entitled to plead guilty unless the district court can articulate a sound reason for rejecting the plea." 678 F.2d 47, 50 (7th Cir.1982) (citation omitted). Turner asserts that the court abused its discretion in this case by failing to articulate any reasons for its rejection of her plea and that the rejection of her plea was not warranted based on the circumstances in the case.
 
 
 9
 The government contends that the judge properly rejected Turner's guilty plea because there was evidence to suggest that it was not voluntarily offered. In order for a guilty plea to be constitutionally valid it must be voluntarily tendered. McCarthy v. United States, 394 U.S. 459, 466 (1969). It is the district court's responsibility to convince itself that the plea is voluntary before it accepts the plea. Id. at 464-65.
 
 
 10
 Both Turner and the United States rely on the same exchange between Turner and Judge DeMascio to support their contentions. The testimony at the plea hearing went as follows:
 
 
 11
 The Court: Now, do you understand, Ms. Turner, that you have a right to a jury trial or a trial by the court on these charges?
 
 
 12
 Turner: Yes, I do.
 
 
 13
 Court: Do you understand that if you had a trial, you would be presumed innocent and the burden would be upon the government to prove that you're guilty beyond a reasonable doubt?
 
 
 14
 Turner: Yes.
 
 
 15
 Court: You also understand that at a trial, you would have the right to question all the witnesses that the government brings into court and to examine all the evidence they produce?
 
 
 16
 Turner: Yes.
 
 
 17
 Court: You also understand that at a trial, you could call witnesses of your own, if you had any, and testify in your own behalf; in other words, you could put up a defense.
 
 
 18
 Turner: Yes.
 
 
 19
 Court: You understand that?
 
 Turner: (defendant nodded.)
 
 20
 Court: You also understand that if you did not wish to testify, you could just sit at counsel table, remain silent, in which case nobody could comment on that fact.
 
 
 21
 Turner: Yes.
 
 
 22
 Court: Knowing that, you still wish to plead guilty?
 
 
 23
 Turner: Well, I was under the understanding I would be in jail before that time.
 
 
 24
 Court: Be in jail before what time?
 
 
 25
 Turner: Before the trial.
 
 
 26
 Court: Is she on bond?
 
 
 27
 Mr. Wilhelm: Yes, your honor. She's on personal bond.
 
 
 28
 Court: How did you get that understanding?
 
 
 29
 Turner: That's what my lawyer told me.
 
 
 30
 Court: Oh, you mean your sentence would be increased by going to trial?
 
 
 31
 Turner: No, that I would be sent--I would go to jail while trial--before the trial was heard.
 
 
 32
 Mr. Wilhelm: No, I didn't say that. I do not recall that. I wouldn't--I did not say that.
 
 
 33
 Turner: Well, remember when I asked you if I took a jury trial, what would happen and you said, "Well, it's going to be harder on you," and I said, "Well, would I be in jail before trial started," and you said "Probably."
 
 
 34
 Wilhelm: I don't recall saying that.
 
 
 35
 Court: Do you want a trial? If you want a trial, you can have it?
 
 
 36
 Turner: Well, will I be put in jail before the trial?
 
 
 37
 Court: No. I don't know what you're doing out of jail now. What bond are you on?
 
 
 38
 Turner: I have no priors.
 
 
 39
 Court: What bond are you on?
 
 
 40
 Turner: On 20 thousand personal.
 
 
 41
 Court: Well if you want to plead guilty, say so.
 
 
 42
 Turner: Well, I did not want to plead guilty to conspiracy.
 
 
 43
 Court: Very well, then we'll go to trial. Got a jury?
 
 
 44
 Clerk: Tomorrow at 9.
 
 
 45
 Court: All right, we'll go to trial tomorrow at 9 o'clock.
 
 
 46
 J.App. 20-22.
 
 
 47
 Turner contends that this exchange is simply the result of her confusion and the judge's impatience. She claims that she understood her plea and that it was voluntary, but the judge and the procedure confused her and she got flustered. She also points out that at her sentencing hearing the judge recognized he had been impatient. Judge DeMascio stated:
 
 
 48
 I've considered carefully the evidence presented in this case. The government does have a method in which they [sic] conclude that there is justification for the statement made by the Probation Department concerning the amount of narcotics distributed by this defendant; however, I'm disinclined to engage in that kind of analysis in this particular case, especially because this woman did attempt to plead guilty here. Probably if I was a little more patient, I might have developed what I thought later she was trying to say; namely, that she admitted the wrong she was doing. I think she wanted to explain that this amount in the house was really not hers but was the co-conspirator's, and she did take the agent to where that was located. I kind of think she was trying to admit responsibility, but I've lost patience with this kind of an offense a long time ago and maybe I did lose patience when I was taking the plea.
 
 
 49
 J.App. at 111.
 
 
 50
 The government argues that Judge DeMascio properly determined that Turner was uncertain about her plea or that it was involuntarily given. In the alternative, the government argues that Turner was not prejudiced by the court's refusal of her plea. The original plea agreement was for 78-97 months on Count I and five years on Count III. On conviction, Turner received an actual sentence of 24 months on Counts I and II and five years on count III for a total of 84 months. Thus, the government asserts that Turner is better off with her current sentence than with the sentence that might have been imposed under the plea agreement.
 
 
 51
 Nevertheless, Turner asserts that she has been prejudiced by the fact that her plea agreement also included a promise by the government to file a motion for reduced sentence based on her cooperation in her case and with others. The government retorts that such a motion is not contingent on Turner's guilty plea and that she could have availed herself of a cooperation reduction anyway by cooperating and has chosen not to.
 
 
 52
 While we find that the court should have accepted Turner's plea, Turner has not been prejudiced by the court's refusal to accept it. From Judge DeMascio's statement quoted above, it is clear that he took account of Turner's contrition at sentencing. Further, Judge DeMascio seems to have refused to consider evidence from the Probation Department that Turner had been dealing larger quantities of cocaine than the quantities with which she was charged. In addition, Turner's sentence is considerably lower than was anticipated in the plea agreement. Thus, taking all these factors into account, we affirm the district court with respect to Turner's plea.
 
 III.
 
 53
 Secondly, Turner contends that there was insufficient evidence to support her conviction because the sole evidence for her conviction was her out-of-court admissions. In a challenge to the sufficiency of the evidence based upon a charge that the evidence relied on was the defendant's own out-of-court statements, this court must insure that the defendant's out-of-court admission is corroborated. United States v. Pennell, 737 F.2d 521, 537 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985) (citing Opper v. United States, 348 U.S. 84, 93 (1954)) (other citations omitted). The corroborating evidence standing alone need not establish every element of the crime. Id. A defendant's out-of-court admission will be sufficiently corroborated if the corroborating evidence "supports the essential facts admitted sufficiently to justify a jury inference of their truth." Id.
 
 
 54
 The government contends that there was sufficient corroborating evidence to meet the standard set out in Pennell. The government points to the fact that a substantial quantity of cocaine was found in Turner's apartment; that the cocaine was found in a secret hiding place and that Turner knew where it was kept; that four scales of the kind used in drug trafficking were found in Turner's kitchen; and that two loaded guns were found in Turner's bedroom which were not the sort of guns that had any legitimate sporting or recreational use. Thus, the government asserts that this evidence corroborates Turner's admissions regarding her drug dealing.
 
 
 55
 We agree that there is sufficient evidence to corroborate Turner's out-of-court admissions. Therefore, we affirm Turner's conviction.
 
 IV.
 
 56
 Finding no reversible error in this case, the judgment of the district court is hereby AFFIRMED.