OPINION
{¶ 1} Defendant-appellant C.J. appeals his adjudication of delinquency for one count of rape of a child under the age of thirteen, and two counts of gross sexual imposition of a child under the age of thirteen. On May 30, 2006, C.J. was charged by complaint with three counts of rape of a child under the age of thirteen, in violation of *Page 2 
R.C. §§ 2907.02(A)(1)(b) and 2152.02(F).[1]
 {¶ 2} At a hearing held before a Greene County Juvenile Court magistrate on February 15, 2007, C.J. was adjudicated delinquent for one count of rape of a child under the age of thirteen and two counts of gross sexual imposition (G.S.I.) of child under the age of thirteen. Prior to disposition, however, the case was certified from Greene County to the Montgomery County Juvenile Court. On March 22, 2007, the juvenile court committed C.J. to the Department of Youth Services (D.Y.S.) for a minimum of one year for the rape offense and a minimum of six months for each G.S.I. offense. These sentences were to be served concurrently with one another. The court also classified C.J. as a juvenile sex offender registrant. The court informed C.J. that said classification required that upon his release from D.Y.S. he would have to register at the sheriffs office in the county in which he intended to reside.
 {¶ 3} C.J. filed a timely notice of appeal with this Court on April 20, 2007.
 I {¶ 4} The events that form the basis of C.J.'s delinquency adjudication allegedly occurred in December of 2005, just prior to Christmas. The minor victim, D.K., was nine years old at the time, while C.J. was fifteen years old. D.K. testified that he was playing video games in C.J.'s room at his house when the offenses occurred. According to D.K.'s testimony, C.J. asked him if he could place D.K.'s penis in his mouth. D.K. stated that he told him no, but C.J. took D.K.'s penis out of his pants *Page 3 
using his hands, and then placed D.K.'s penis in his mouth for a short time. D.K. further testified that C.J. asked him if he could put D.K.'s penis in his mouth on later occasion, but D.K. stated that he immediately said no. No further instances of abuse were reported. D.K. did not disclose that he had been sexually assaulted until May of 2006.
 {¶ 5} On May 23, 2006, C.J. was interviewed by Sergeant Thomas Jones and Officer Matthew Hoying of the Yellow Springs Police Department in Greene County, Ohio. After first informing C.J. of his Miranda rights, the officers began questioning him regarding the allegations of sexual assault made against him by D.K. Sgt. Jones testified that C.J. was initially defensive, but quickly became remorseful and admitted orally and in writing to assaulting D.K. on three separate occasions.
 {¶ 6} Despite his earlier admissions, at the hearing on February 15, 2007, C.J. denied ever assaulting D.K. C.J. testified that his confession was coerced by Sgt. Jones and Officer Hoying, and they threatened to put him in jail if he did not tell the truth. As stated previously, C.J. was adjudicated delinquent for one count of rape of a child under the age of thirteen, and two counts of gross sexual imposition of a child under the age of thirteen, and sentenced accordingly.
 {¶ 7} It is from this adjudication that C.J. now appeals.
 II {¶ 8} C.J.'s first assignment of error is as follows:
 {¶ 9} "THE COURT ERRED BY RULING THE APPELLANT'S STATEMENT TO POLICE OFFICERS COULD BE USED IN TRIAL."
 {¶ 10} In his first assignment, C.J. contends that the juvenile court erred as a *Page 4 
matter of law when it overruled his motion to suppress the incriminating statements he made to Sgt. Jones and Officer Hoying during the interview on May 23, 2006. Essentially, C. J. argues that his will was overborne when he was questioned by the two police officers without the benefit of an attorney being present to protect his rights as a fifteen year old juvenile. Moreover, he argues that his mother and grandmother were placed in a separate room and not allowed to be with him during the questioning. Lastly, C.J. asserts that at the time he was questioned, he suffered from an IEP that caused attention deficit hyperactivity disorder which rendered him incapable of processing the police officer's statements. In light of the officer's alleged coercive behavior and his own inability to understand the officer's statements, C.J. argues that his oral and written confession was involuntary, and therefore inadmissible against him.
 {¶ 11} The following standard governs our review of a trial court's decision regarding a motion to suppress:
 {¶ 12} "We are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994),93 Ohio App.3d 586, 592, 639 N.E.2d 498.
 {¶ 13} The Due Process Clause of the Fourteenth Amendment requires the exclusion of confessions that are involuntarily given by an accused.Dickerson v. United States (2000), 530 U.S. 428, 433, 120 S.Ct. 2326. The test under this due process analysis is "`whether a defendant's will was overborne' by the circumstances *Page 5 
surrounding the giving of a confession. Dickerson, 530 U.S. at 434, quoting Schneckloth v. Bustamonte (1973), 412 U.S. 218, 226,93 S.Ct. 2041. "The due process test takes into consideration `the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation.'" Dickerson,530 U.S. at 434. The totality of the circumstances that a court should consider includes "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of [the] interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. State v. Meeds, Miami App. No. 2003 CA 5,2004-Ohio-3577, quoting State v. Edwards (1976), 49 Ohio St.2d 31,40-41, 358 N.E.2d 1051, ¶ 2 of the syllabus, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147.
 {¶ 14} Initially, it should be noted that although Sgt. Jones and Officer Hoying characterized the interview with C.J. as a non-custodial interrogation, the officers still chose to Mirandize him before asking him any questions regarding the alleged offenses he was suspected of committing. After he was informed of his constitutional rights and signed the Miranda form, C.J. did not request that an attorney be present to represent him, nor did he request that his mother or grandmother be present during the interview.
 {¶ 15} Moreover, Sgt. Jones testified that he personally spoke with C.J.'s mother and grandmother throughout the interview and informed them that C.J. had made admissions which amounted to a confession that he assaulted D.K. in order to keep them appraised of the results of the interview. Both officers testified that regardless of the outcome of the interview, C.J. would be allowed to return home at the *Page 6 
end of their discussion. No evidence was presented that either officer coerced or threatened C.J. into making a confession. In fact, both officers testified that C.J. seemed genuinely remorseful regarding the admissions he made during the interview. It is also important to note that the interview lasted only approximately forty (40) minutes. While the evidence presented at the hearing established that C.J. may suffer from an IEP that causes attention deficit hyperactivity disorder, there was no credible evidence adduced which demonstrated that C.J. was incapable of understanding or voluntarily responding to the questions asked of him by the officers during the interview. Simply put, the record clearly establishes that C.J.'s will was not overborne at any point during the interview, and his admissions were made in a knowing and voluntary fashion. Thus, the trial court did not err when it overruled C. J.'s motion to suppress.
 III {¶ 16} C. J.'s second and final assignment of error is as follows:
 {¶ 17} "THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF THE CHARGE OF GROSS SEXUAL IMPOSITION WHEN THE ACCUSER STATED THAT NO GROSS SEXUAL IMPOSITION TOOK PLACE."
 {¶ 18} In his final assignment, C.J. contends that the trial court erred when it found him guilty of two counts of gross sexual imposition when no direct testimony was adduced at the hearing from either D.K., the victim, or C.J. which demonstrated that a second G.S.I. occurred. C.J. further argues that the evidence, at best, demonstrated that there was only one occasion where a sexual assault occurred, and no G.S.I. was committed at that time. After a thorough review of the record, we find that the *Page 7 
evidence establishes that C.J. committed one G.S.I. immediately prior to the rape of D.K. However, there was no evidence adduced at the hearing which demonstrated that a second G.S.I. was committed by C.J.
 {¶ 19} The State argues that in his confession to Sgt. Jones and Officer Hoying, C.J. stated that he had assaulted D.K. on three separate occasions. At the motion to suppress hearing and the contested hearing, C.J. completely denied that he had ever assaulted D.K. D.K. testified at the contested hearing that C.J. fondled his penis with his hands and then fellated him on one occasion at C.J.'s home. D.K. went on to testify that, besides that one instance, there were no other occasions in which C.J. assaulted him. The State contends that C.J.'s confession to three separate instances of assault establish an adequate basis upon which to convict him of one count of rape, as well as two separate counts of G.S.I. For the following reasons, we hold that C.J. was properly adjudicated delinquent regarding one count of rape and one count of G.S.I. However, with respect to the remaining count of G.S.I., we hold that, regardless of the contents of C.J.'s confession, the evidence adduced at trial failed to demonstrate that he committed another G.S.I. Thus, the magistrate erred when she adjudicated him delinquent for a second G.S.I.
 {¶ 20} Before an extrajudicial confession of a crime is competent to be admitted at the confessor's trial, the State must first introduce evidence independent of the confession tending to establish "(1) the act, and (2) the criminal agency of that act." State v. Edwards (1976),49 Ohio St.2d 31, 358 N.E.2d 1051, ¶ 1 of the syllabus. The evidence adduced must meet some essential element of the crime charged, though it need not meet all of them. "Ohio does not require evidence upon all elements of the *Page 8 
crime but only `some material element.'" State v. Van Hook (1988), 39 Ohio St.3d 256, 262, 530 N.E.2d 883, 888-889, quoting State v.Maranda (1916), 94 Ohio St. 364, 372, 114 N.E. 1038, 1040. The evidence presented need not be so strong that it is capable of persuading a factfinder on some element of the crime beyond a reasonable doubt, "but . . . there must be some proof, not necessarily direct and positive, usually but circumstantial, tending to prove the fact that a crime was committed." State v. Maranda, supra, at 371. See also State v.Burge (1987), 42 Ohio App.3d 35, 36; State v. King (1983),10 Ohio App.3d 161, 166; State v. Edwards, supra, at paragraph 1(C) of the syllabus; State v. Black (1978), 54 Ohio St.2d 304, syllabus.
 {¶ 21} In the instant case, C.J. was adjudicated delinquent for one count of rape of a minor under the age of thirteen and two counts of G.S.I. of a minor under the age of thirteen. Testimonial evidence from the victim was presented at the contested hearing on February 17, 2007, that C.J. had committed a rape and a G.S.I. against D.K. prior to Christmas in December of 2005. D.K. further testified that this was the only time that he was sexually assaulted by C.J. As previously stated, C.J. confessed prior to the hearing that he sexually assaulted D. K. on three occasions. At the hearing, however, C.J. completely denied that any inappropriate contact had occurred between him and D.K. at any point in time. C.J. testified that he only confessed to assaulting D.K. because he was coerced into doing so by threats from Sgt. Jones and Officer Hoying. Thus, the only evidence introduced at the hearing that C.J. sexually assaulted D.K., aside from the extrajudicial confession, came from D.K. who testified that the abuse only happened during one instance where a rape and a single G.S.I. occurred. Simply put, there was no evidence, circumstantial or otherwise, independent of C. J.'s *Page 9 
extrajudicial confession which corroborated a second count of G.S.I. "The facts of the admission plus the corroborating evidence must establish all the elements of the crime." Opper v. U.S. (1954),348 U.S. 84, 92, 75 S.Ct. 158, 164.
 {¶ 22} Thus, the magistrate erred as a matter of law when she adjudicated C. J. delinquent for a second count of G.S.I. when the evidence adduced at the hearing established that only one G.S.I. had occurred, and no further evidence was presented which corroborated C. J.'s extrajudicial admission that he committed a second G.S.I. In light of this ruling, C.J.'s adjudication of delinquency for the second count of G.S.I. is reversed and vacated.
 {¶ 23} C.J.'s second and final assignment of error is sustained in part and overruled in part.
 IV {¶ 24} In light of the foregoing analysis, the judgment of the trial court is affirmed in part and reversed in part. With respect to C.J.'s adjudication of delinquency for the second count of G.S.I., the judgment of the magistrate and trial court is reversed, and C.J.'s sentence in that regard is likewise vacated. This matter is remanded for proceedings consistent with this opinion.
BROGAN, J. and VALEN, J., concur.
(Hon. Anthony Valen retired from the Twelfth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] Each of the three rape counts in the complaint additionally charged C.J. in the conjunctive, as well as in the alternative, with gross sexual imposition. Ultimately, C.J. was adjudicated delinquent for one count of rape and two counts of gross sexual imposition. *Page 1