**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4035
_____

UNITED STATES OF AMERICA

v.

EMMANUEL DURAN, a/k/a Manny a/k/a Manny Yunk

Emmanuel Duran,
                    Appellant
_____

No. 12-4054
_____

UNITED STATES OF AMERICA

v.

RAHEEM BROWN aka HEEM

Raheem Brown,
                    Appellant
_____

No. 12-4097
_____

UNITED STATES OF AMERICA

v.

JOHN BOWIE, a/k/a HEADS

John Bowie,
                    Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-10-cr-00626-001/002/003)
District Judge: Hon. Legrome D. Davis

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 21, 2014

Before: CHAGARES, GREENAWAY, JR., and VANASKIE, Circuit Judges.

(Filed: April 9, 2014)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Emmanuel Duran, Raheem Brown, and John Bowie appeal their convictions on conspiracy, robbery, and firearms offenses. Finding no merit in any of their contentions, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only recount the facts necessary to our disposition. Duran, Brown, and Bowie, along with Joshua Hines and Kevin Staten, robbed a string of Philadelphia businesses at gunpoint between February and May 2010. Their robberies followed a similar blueprint. Two or three of the co-conspirators would enter the target establishment (six of seven were pharmacies) brandishing firearms and would order the employees and customers to the ground. They would demand cash, pharmaceuticals, and other items of value, such as transit passes. Sometimes they would tie up their victims or force them into confined spaces. Another

co-conspirator would maintain a lookout at the door. After robbing the business, the co-conspirators would flee in one or more vehicles, reconvening later to catalog and sell the stolen property. On one occasion, victims and bystanders chased their getaway car, from which the co-conspirators fired at least one live round to deter pursuit. Not every co-conspirator was involved in every robbery.

The one robbery that did not involve a pharmacy targeted a vehicle repair business called the Love Auto Body Shop. It involved only Duran and Brown. In the course of this robbery, Duran shot a customer who had initially refused to surrender his money outside the shop's office, and then entered the office and robbed the business while Brown held his gun on the customers outside. Although there was some evidence at trial that this robbery was more opportunistic than the pharmacy robberies, the Government charged it as part of the same conspiracy.

The defendants stole at least two of the firearms that they used to commit the charged robberies in a home invasion in November 2009. The victim, Myron Baker, was opening his garage door to leave his house when Duran slipped under it, threatened him with a revolver, and ordered him to the ground. Duran then let Brown and Bowie in, and the three proceeded to tie Baker up and rob him. Among the items taken were three weapons: a black Glock 27, a half black, half stainless steel Heckler & Koch ("H&K") automatic pistol, and a Mossberg 500 shotgun. The Government did not charge any of the three defendants with this home invasion, but presented evidence of it at trial pursuant to Fed. R. Evid. 404(b).

3

Witness testimony and ballistic analysis presented at trial showed that the Glock 27 and H&K were both brandished in and discharged during several of the subsequent robberies. Police matched the H&K to a projectile and casing recovered from the Love Auto Body Shop robbery and matched the Glock 27 to a projectile and casing found after the co-conspirators fired a shot at citizens pursuing them after one of the pharmacy robberies. Police recovered the H&K after it fell out of Duran's waistband as he attempted to flee at the time of his arrest. The Glock 27 was recovered in Bowie's possession at the time of his arrest.

Bowie made two statements to the police after he was apprehended. Immediately following his arrest on June 10, 2010, he waived his rights pursuant to Miranda v. Arizona, 384 U.S 436 (1966) and admitted to possessing the Glock 27. On June 23, 2010, while still in custody, his uncle notified the police that he wished to speak with them again. The police once again advised him of his Miranda rights, at which point he informed them that he wanted to speak to his attorney. Questioning immediately ceased and he phoned his attorney's office. The office informed him that his attorney was not in the office but would come to the place where he was held that afternoon, and advised him not to make any statement until his attorney arrived. He also spoke to his grandmother who likewise urged him not to make a statement without his attorney present.

Following these calls, neither of the two law enforcement officials who had come to interview him, FBI Special Agent William Brooks and Philadelphia Police Detective Joseph Murray, asked him any questions. Bowie apparently then changed his mind, and informed them that he wanted to make a statement without waiting for his attorney. He

4

was once again advised of his <u>Miranda</u> rights and waived them.  Bowie then admitted to participating in five of the commercial robberies.  Special Agent Brooks and Detective Murray advised Bowie several times during his statement that he could stop talking at any time, and each time Bowie declined.  Bowie signed each of the fourteen pages of his statement at its conclusion.

A grand jury returned an indictment charging Duran, Brown, Bowie and Hines with conspiracy to commit Hobbs Act robberies in violation of 18 U.S.C. § 1951(a); conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846; eight counts of Hobbs Act robbery in violation of 18 U.S.C § 1951(a); eight counts of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C § 924(c); and five counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).[1]  Not every defendant was charged in every count.

Following numerous pretrial motions, which will be discussed as they become relevant below, the defendants proceeded to trial in May 2012.  After seven days of evidence, which consisted of video surveillance footage, forensic and ballistic evidence, portions of Bowie's statements, and testimony from victims, witnesses, and Hines and Staten, both of whom pled guilty and cooperated with the Government, the jury returned guilty verdicts on all charges. The defendants filed post-trial motions under Federal Rules

[1] The grand jury returned these charges in a superseding indictment.  Staten and Hines pled guilty prior to trial.  The Government amended the superseding indictment to correct the name of the Love Auto Body Shop and removed overt acts and charges relating to an eighth armed robbery that the Government decided not to pursue.  The operative charging instrument at trial was referred to as the Second Amended Superseding Indictment ("SASI").

of Criminal Procedure 29, 33, and 34, each of which were denied. Duran, Bowie, and Brown were sentenced to within-Guideline sentences of 1,410, 1,735, and 1,530 months of imprisonment, respectively. All three timely appealed.

## II.

The District Court had jurisdiction over the alleged violations of federal criminal law pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

The defendants raise a host of challenges to their convictions on appeal. All three argue that the District Court erred when it permitted the Government to introduce evidence of the November 2009 home invasion robbery, that the indictment was defective, and that the robbery of the Love Auto Body Shop should have been severed. Bowie argues that there was an impermissible variance between the indictment and trial evidence with respect to the Love Auto Body Shop robbery and that the jury should have been charged that they could have found that this robbery was part of a separate conspiracy. He also contends that his statement should have been suppressed. Brown argues that the District Court lacked jurisdiction over the Hobbs Act robbery of the Love Auto Body Shop. Each contention will be addressed in turn. All are without merit.

## A.

The Government timely moved pursuant to Fed. R. Evid. 404(b) to admit evidence of two home invasion robberies not charged in the indictment. The District Court granted this motion in part and permitted the Government to introduce evidence of the home invasion robbery of Myron Baker in which three firearms were stolen, but denied the

6

Government's request to admit evidence of the other uncharged home invasion. All three defendants contend that the District Court's decision was in error.

Rule 404(b) prohibits introduction of evidence of prior crimes or bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of prior crimes or bad acts is admissible for other purposes, including, as is relevant here, opportunity, preparation, or identity. Fed. R. Evid. 404(b)(2). To determine whether admission under this rule is proper, a court must apply the "familiar" four-part test from Huddleston v. United States, 485 U.S. 681, 685 (1988) and analyze whether it "(1) has a proper evidentiary purpose under Rule 404(b); (2) is relevant under Rule 402; (3) is of such probative value as to outweigh the prejudice to the defendant as required by Rule 403; and (4) is accompanied by a proper limiting instruction." United States v. Smith, 725 F.3d 340, 344 (3d Cir. 2013). We review evidentiary rulings for abuse of discretion, and exercise plenary review over "whether evidence falls within the scope of Rule 404(b)." United States v. Green, 617 F.3d 233, 239 (3d Cir. 2010). The admission of evidence of the Baker robbery meets all four elements of the Huddleston test.

The evidence had several non-propensity purposes. It informed the jury of how the defendants obtained the weapons that they used in their crime spree. The defendants did not simply act together in order to rob Baker, they acted to obtain the very weapons that they used for their subsequent robberies (one of which was found in Bowie's possession when he was arrested and the other of which was found in the wake of a fleeing Duran). This supported an inference that those who robbed Baker, whom Baker

7

identified at trial, were those who participated in the subsequent charged robberies. It also demonstrated the close relationship between the three defendants in this appeal.

Evidence of the Baker robbery was not only admissible for a proper purpose, but it was plainly relevant. Its prejudicial value was slight in light of its strong probative value that tended to indicate that the defendants who robbed Baker continuously possessed the weapons they stole through the time of arrest. The District Court provided a proper limiting instruction that clearly stated that this evidence was only relevant as it related to how the defendants came to possess the firearms they used and their close relationship. Its decision to admit this evidence was not erroneous.

B.

All three defendants argue that the indictment was defective because it was missing essential elements, and therefore judgment should be vacated and charges dismissed pursuant to Fed. R. Crim. P. 34(a). Specifically, they contend that the SASI failed to sufficiently allege violations of 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c) because it did not specifically allege that the charged conduct occurred "in furtherance of any crime" or "in any furtherance of a plan or purpose." We exercise plenary review over a challenge to the sufficiency of an indictment. United States v. Bansal, 663 F.3d 634, 656 (3d Cir. 2011).

An indictment is sufficient as long as it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."

8

United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012) (quotation marks omitted). A court should uphold an indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense." United States v. Vitillo, 490 F.3d 314, 324 (3d Cir. 2007) (quoting United States v. Childress, 58 F.3d 693, 720 (D.C. Cir. 1995).

The indictment here mirrors the charged portions of §§ 1951(a) and 924(c). For example, the Hobbs Act provides "[w]hoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be [punished]." 18 U.S.C. § 1951(a) (emphasis added). The indictment alleged that the defendants attempted to obstruct commerce by robbing several businesses. As the District Court correctly pointed out in its post-trial opinion, the statute is written in the disjunctive. The indictment only needs to allege that the defendants acted "in furtherance of" another crime if the Government had charged them with the latter prong of the statute. The Government adequately alleged all of the acts necessary to form a violation of the statute's first prong. The indictment was not defective.[2]

C.

The defendants next raise several challenges pertaining to the Love Auto Body Shop robbery. They contend that this robbery was part of a separate conspiracy between only Duran and Brown, and that it therefore should have been severed. Bowie also

---

[2] The other statute that the defendants contend failed to match the indictment, 18 U.S.C. § 924(c), is similarly constructed in the disjunctive. The defendants' challenge fails as to this provision for the same reason.

9

maintains that the Government's failure to prove a single conspiracy constituted an improper variance between the indictment and proof at trial, and that the jury should have been instructed that they could have found the existence of two conspiracies instead of one. All of these contentions fail.

1.

Fed. R. Crim. P. 8 provides that offenses may be joined if they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Defendants may be joined if they are alleged to have participated in the same "series of acts or transactions, constituting an offense or offenses . . . . All defendants need not be charged in each count." Fed R. Crim P. 8(b). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). We exercise plenary review over whether counts were properly joined in the first place, United States v. Irizarry, 341 F.3d 273, 287 (3d Cir. 2003), and then review a District Court's denial of a motion for severance for abuse of discretion. United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005).

There was no improper joinder. The indictment charged that the defendants conspired to steal money, drugs, and other items of value from businesses through use of force. App. 387. The Love Auto Body Shop robbery was just this type of crime: Duran and Brown committed the robbery together, stealing money, and using a firearm to

10

coerce victims. It was committed in close temporal proximity to the other charged robberies. That the other six robberies were of pharmacies does not nullify the common characteristics that all seven shared.

Likewise, the District Court did not abuse its discretion in declining to sever this offense. Rule 14 only permits severance of properly joined counts and defendants when a joint trial would cause a defendant "clear and substantial prejudice." United States v. Riley, 621 F.3d 312, 335 (3d Cir. 2010). We have repeatedly affirmed denial of severance motions when evidence is "able to [be] compartmentalize[d]" by a jury, like the evidence was here. United States v. Walker, 657 F.3d 160, 170 (3d Cir. 2011). All of the robberies, including that of the Love Auto Body Shop, involved separate incidents occurring at different times, and often with different combinations of defendants. It would not have been difficult for the jury to follow the District Court's clear instruction that it must assess the evidence separately against each defendant. See App. 2093.

2.

Just as there was no error in declining to sever the Love Auto Body Shop robbery, the indictment was not infirm for charging one single conspiracy instead of two. We view the evidence in the light most favorable to the verdict to determine whether a reasonable jury could have found the existence of a single conspiracy. United States v. Lee, 359 F.3d 194, 207 (3d Cir. 2004). To determine whether there was one conspiracy, we examine 1) whether the conspirators shared a common goal; 2) whether the agreement contemplated a continuous result; and 3) the extent to which the participants overlapped. United States v. Kelly, 892 F.2d 255, 259 (3d Cir. 1989).

11

As discussed, the evidence that the Government adduced indicated that there was a common plan between a group of co-conspirators to rob businesses using violence in order to obtain money and other items of value. The group executed this plan over a period of less than four months in early 2010. The cast of characters involved in each robbery varied only slightly. The proof at trial was consistent with a single conspiracy, as charged in the indictment.[3]

### D.

Bowie next mounts two challenges concerning the statement he made to the police while in custody on June 23, 2010. He contends that the District Court erred in denying his motion to suppress it because the police improperly resumed questioning him after he invoked his right to an attorney and then lied to his attorney about whether he had made a statement. He also argues that even if the statement should not have been suppressed, the portion of his statement in which he admitted to twice robbing the "M.D. Pharmacy" should not have been admitted because it was not corroborated by any other evidence.

### 1.

We review the denial of a motion to suppress for clear error as to the facts that the District Court found and exercise plenary review over the application of law to those facts. United States v. Davis, 726 F.3d 434, 439 (3d Cir. 2013). If a suspect invokes his

---

[3] As the evidence at trial tended to show the existence of a single conspiracy, the District Court did not abuse its discretion in declining to give a jury instruction that would have permitted the jury to find that there were two conspiracies instead of one. See United States v. Greenidge, 495 F.3d 85, 93 (3d Cir. 2007) ("[A] district court can properly refuse a defendant's request for a jury instruction on single versus multiple conspiracies if there is insufficient evidence to support such an instruction.").

12

right to an attorney, questioning must cease until his attorney is present. Miranda, 384 U.S. at 473-74. A suspect may, however, change his mind if he himself initiates "a conversation evincing a willingness and a desire for a generalized discussion about the investigation," and then knowingly, voluntarily, and intelligently waives his right to have an attorney present. United States v. Velasquez, 885 F.2d 1076, 1085 (3d Cir. 1989).

The District Court held an evidentiary hearing on Bowie's motion and found that Bowie had willingly initiated contact with the police after he invoked his right to have an attorney present, and then waived his Miranda rights knowingly and voluntarily. It found that Bowie was "adamant that he wanted to speak" to law enforcement and that he "did not want to wait until his attorney arrived." Bowie App. 47. It found that Bowie was advised of his Miranda rights before he began to speak and at several points during the statement, and that at each time Bowie waived his rights and expressed a desire to continue to talk. Bowie reviewed and signed each page of his statement. The District Court specifically credited the testimony of the Agent Brooks as "credible" and "truthful," and Bowie's testimony that he was badgered into making the statement as "patently false." Id. at 47-48. Bowie cites to no evidence that could lead us to conclude that these facts were clearly erroneous. Having made these findings, the District Court did not err in denying Bowie's motion to suppress.

Bowie also argues that his statement should be suppressed because the police lied to his attorney when the attorney arrived at the station, telling him that Bowie had already made his statement when in fact Bowie's statement was still in progress. The District Court did not make any findings with respect to this argument. Even assuming that it is

13

true, it is irrelevant. The Supreme Court has squarely held that "even deliberate deception of an attorney could not possibly affect a suspect's decision to waive his Miranda rights" if the suspect is not aware that his attorney is attempting to contact him. Moran v. Burbine, 475 U.S. 412, 423 (1986). What matters is whether Bowie was advised of his rights and knowingly and voluntarily waived them. The District Court did not err in declining to suppress on this ground.

2.

Even if his statement should not have been suppressed, Bowie argues that the portion in which he admits to robbing a business named the "M.D. Pharmacy" twice should not have been admitted at trial because it violated the corpus delicti rule. This rule provides that the Government cannot introduce a defendant's confession until it introduces "substantial independent evidence which would tend to establish the trustworthiness of the statement." Opper v. United States, 348 U.S. 84, 93 (1954). Bowie's argument fails because his statement was corroborated by security footage of the robberies that confirmed that they occurred in the precise way that he described them in his statement. The District Court did not abuse its discretion in admitting his admissions regarding these robberies.

E.

Finally, Brown argues that the Government did not have jurisdiction over the Love Auto Body Shop robbery because the business lacked a valid permit, license, or registration. We exercise plenary review over questions of statutory construction. United States v. Dees, 467 F.3d 847, 851 (3d Cir. 2006). The Hobbs Act criminalizes robbery

14

that interferes with interstate commerce.  Its reach extends to all commerce over which the United States has jurisdiction, "coextensive with that of the Commerce Clause." Walker, 657 F.3d at 179 (quotation marks omitted).  We have never held that its scope only reaches lawfully permitted businesses.  Indeed, we have applied it when the robbery at issue targeted illegal narcotics traffickers, who operate entirely outside of the law.  See, e.g., id. at 165; see also United States v. McCraney, 612 F.3d 1057, 1064 (8th Cir. 2010) (robbery of a drug dealer satisfied interstate commerce requirement in Hobbs Act); United States v. Parkes, 497 F.3d 220, 230 (2d Cir. 2007)  (same); United States v. Williams, 342 F.3d 350, 354-44 (4th Cir. 2003) (same).  The only requirement in the statute is that the robbery affect commerce "in any way or degree."  18 U.S.C. § 1951(a).  The robbery of an auto body shop that routinely purchased parts in interstate commerce sufficiently satisfied this requirement.

## IV.

We have considered all of the appellants' other arguments and conclude that they are without merit.  For the foregoing reasons, we will affirm their convictions.