United States, Appellee

v.

John M. ARNOLD, Private First Class
U.S. Army, Appellant

No. 04-0524

Crim. App. No. 20010713

United States Court of Appeals for the Armed Forces

Argued February 8, 2005

Decided August 3, 2005

BAKER, J., delivered the opinion of the Court, in which GIERKE,
C.J., and CRAWFORD, EFFRON, and ERDMANN, JJ., joined.

Counsel

For Appellant: Captain Rob W. MacDonald (argued); Colonel Mark
Cremin, Lieutenant Colonel Mark Tellitocci, and Major Allyson G.
Lambert (on brief); Captain Charles L. Pritchard Jr.

For Appellee: Captain Isaac C. Spragg (argued); Colonel Steven
T. Salata, Lieutenant Colonel Mark L. Johnson, and Major Natalie
A. Kolb (on brief).


Military Judge:  Patrick J. Parrish


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION

United States v. Arnold, No. 04-0524/AR

Judge BAKER delivered the opinion of the Court.

Contrary to his plea, Appellant was convicted by a military judge before a general court-martial of one specification of wrongful distribution of ecstasy[1] in violation of Article 112a, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 912a (2000).[2] The adjudged and approved sentence provided for a bad-conduct discharge, confinement for six months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade, E-1. The United States Army Court of Criminal Appeals affirmed in a short-form per curiam opinion. United States v. Arnold, No. ARMY 20010713 (A. Ct. Crim. App. Mar. 22, 2004) (unpublished). We granted review to determine whether the evidence admitted to corroborate Appellant's confession was, in fact, independent of the confession as required by Military Rule of Evidence (M.R.E.) 304(g).[3] We conclude there was no error, plain or otherwise, and affirm.

### BACKGROUND

Appellant and Private Dominic I. Guisti lived in the same barracks at Fort Bragg and shared mutual friends. One evening

---

[1] This drug is formally known as 3, 4-methylenedioxymethamphetamine or MDMA.

[2] Appellant was acquitted of an accompanying specification alleging a wrongful distribution of lysergic acid diethylamide or LSD.

[3] The granted issue reads as follows:
WHETHER THE MILITARY JUDGE PLAINLY ERRED BY ADMITTING APPELLANT'S CONFESSION BASED ON TESTIMONY DERIVED EXCLUSIVELY FROM THE CONFESSION ITSELF, WHICH FAILED TO SATISFY THE INDEPENDENCE REQUIREMENT OF THE CORROBORATION RULE.

in September of 2000, Appellant, Guisti and three other soldiers went to a rave club called Studio 315. Guisti, who had purchased drugs at the club on previous occasions, wanted to obtain some ecstasy pills. Upon arriving at the club, Guisti was able to obtain the ecstasy pills and gave each of the other four soldiers one pill. Later, according to Guisti's testimony at Appellant's trial, while the soldiers were still at the club, Appellant asked Guisti, "Hey, you wanna [sic] get some more?" Guisti collected the money from the others and gave it to Appellant who left to procure more of the drug. Appellant returned and distributed ecstasy pills to Guisti and the others in the group.

During an investigation by the Criminal Investigation Command in November 2000, Guisti was interrogated and made a statement implicating himself and other soldiers, including Appellant, in a variety of drug offenses. In this statement, although Guisti admitted to distributing ecstasy to Appellant at Studio 315, he did not indicate that Appellant had distributed ecstasy to him. On January 19, 2001, Appellant was interrogated and admitted to purchasing and distributing ecstasy at Studio 315. He also admitted to distributing LSD on other occasions. Appellant memorialized his admissions in a written statement in which he recounted the events described above.

On March 1, 2001, Appellant's investigation pursuant to Article 32, UCMJ, 10 U.S.C. § 832 (2000), was convened on charges of conspiracy to distribute LSD and distribution of LSD. On March 20, 2001, the investigating officer concluded that no reasonable grounds existed to support either charge. However, he concluded that reasonable grounds existed to charge Appellant with conspiracy to distribute ecstasy and distribution of ecstasy.

Also in March, Guisti negotiated a plea agreement and was subsequently tried on March 27, 2001. The agreement required him to cooperate in the trials of other soldiers implicated in the investigation. The day before his trial, Guisti executed a second sworn statement focused exclusively on his use and distribution of LSD. In this statement, he admitted to distributing LSD to Appellant, but indicated that he had no knowledge of Appellant's distribution of LSD. In late May, the Government withdrew the charge against Appellant for conspiracy to distribute LSD, proceeded with the charge of distribution of LSD and preferred an additional charge of distribution of ecstasy.

Appellant was arraigned on June 6, 2001, and at an Article 39(a) session on July 5, 2001, the military judge granted a defense motion to reopen the Article 32 investigation to properly reinvestigate the additional charge of ecstasy

distribution.  The investigation was reopened on July 13, 2001, and the investigating officer reported on July 17, 2001, that reasonable grounds existed to support the additional charge.

Trial on the merits in Appellant's court-martial began on August 3, 2001.  Appellant's confession was admitted after the military judge denied Appellant's motion to suppress his confession on the ground that it was involuntary.  Guisti was called as a witness for the prosecution and testified that Appellant purchased and distributed ecstasy at Studio 315 the previous September.  On cross-examination, he admitted that it was the first time he had made such a statement in court. During cross-examination, the following colloquy occurred between Guisti and defense counsel:

> Q.   Isn't it true, Private Guisti, that you saw PFC
> [Private First Class] Arnold's statements from
> the prosecutor yesterday?
>
> A.   Yes, that is true.
>
> Q.   The prosecutor showed you that when he was
> interviewing you for this case, isn't that true?
>
> A.   Yes, ma'am.
>
> Q.   So you knew what you were looking at before you
> came in here?
>
> A.   Yes, I did, ma'am.

On appeal, Appellant argues that this line of questioning indicates that Guisti's testimony was derived from his viewing of Appellant's statement the previous day, and not from his

independent knowledge and recollection of Appellant's conduct. However, the record contains other additional material relevant to the assigned issue. After Appellant's colloquy with defense counsel, the military judge questioned Guisti regarding the events at Studio 315:

Q.  When was the first time that you remembered that the accused gave you this pill of ecstasy? The second time that you just described, that the accused went and got these pills -- when was the first time you happened to remember that that actually happened?

A.  It was after the statements I made, sir.

Q.  So it was sometime after 26 March, that's when you first remember that happening?

A.  Yes, sir. It never came up in any of the previous questioning -- the previous statements that I gave.

. . . .

Q.  So is today, in court, the first time you told that to anybody?

A.  As far as on the record, sir.

Q.  But prior to today, have you told anybody that the accused gave you this pill?

A.  As far as being on the record?

Q.  Well, not under oath --

A.  I told the defense attorney when she was questioning me before the Article 32.

Immediately following this exchange, defense counsel examined Guisti as follows:

Q.    That conversation that you had, where you disclosed you'd had this memory regarding PFC Arnold and distribution of ecstasy, that occurred about two weeks ago, correct?

A.    No, that's the first time I told you about it.

Q.    About two weeks ago?

A.    Yes.

Later during the trial, defense counsel argued that Guisti's testimony was inadequate corroboration for Appellant's admissions to ecstasy distribution at Studio 315 because Guisti's testimony was inconsistent and untruthful. However, defense counsel did not contend that Guisti's corroborating testimony was not independent evidence. Appellant now contends that Guisti's testimony was derived exclusively from reading Appellant's confession prior to Appellant's trial and therefore, "cannot serve as substantial independent evidence to corroborate that very same confession."

DISCUSSION

M.R.E. 304(g) provides:

> An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if <u>independent evidence</u> . . . has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth.

Emphasis added. Independent evidence is evidence that is not based on or derived from the accused's extrajudicial statements. <u>Opper v. United States</u>, 348 U.S. 84, 93 (1954). The principle

7

of corroboration embedded in M.R.E. 304(g), like the principle underpinning its civilian counterparts, is intended to guard against the false or coerced confession.  However, corroborating evidence need not confirm each element of an offense, but rather must "corroborate[] the essential facts admitted to justify sufficiently an inference of their truth."  M.R.E. 304(g).  This inference may be drawn from a quantum of corroborating evidence that this Court has described as "very slight."  United States v. Melvin, 26 M.J. 145, 146 (C.M.A. 1988).

Appellant correctly frames the legal issue presented.  If Guisti's testimony was solely derived from his review of Appellant's sworn statement, his testimony could not independently serve to corroborate Appellant's statement.  However, the record does not support Appellant's factual conclusion.

The record reflects that Guisti was shown and read Appellant's statement the day before the trial.  The military judge questioned Guisti to discern whether his description of the events at Studio 315 was derived from Appellant's statement or was derived, in part or in whole, from his own independent recollection.  When asked by the military judge when he remembered that Appellant had given him an ecstasy pill, Guisti said, "I told the defense attorney when she was questioning me before the Article 32."  The reopening of Appellant's Article 32

investigation relevant to the ecstasy distribution offense occurred on July 16. Defense counsel, during the Article 32 investigation, responded with the following question to Guisti: "[T]hat occurred about two weeks ago, correct?" Guisti answered, "Yes."

If, as the record reflects, Guisti implicated Appellant prior to the reopening of Appellant's Article 32 investigation on July 16, his subsequent testimony must, at least in part, be derived independently of Appellant's statement, which he read the day before trial. Further, Guisti's response to the military judge indicates that he implicated Appellant regarding the essential fact contained in Appellant's confession -- distribution of ecstasy at Studio 315. As a result, Guisti's testimony provides independent and sufficient corroboration of Appellant's confession and the military judge did not err in admitting the confession.

## DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.