*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Michael P. WHITEEYES, Specialist**
United States Army, Appellant

**No. 21-0120**

Crim. App. No. 20190221

Argued October 19, 2021—Decided March 25, 2022

Military Judge: Joseph A. Keeler

For Appellant: *Captain Nandor F. R. Kiss* (argued); *Colonel Michael C. Friess, Lieutenant Colonel Angela D. Swilley, Major Kyle C. Sprague*, and *Captain Thomas J. Travers* (on brief).

For Appellee: *Captain Andrew M. Hopkins* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams, Major Dustin B. Myrie,* and *Captain Marc J. Emond* (on brief); *Major Pamela L. Jones.*

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, and Senior Judge EFFRON joined. Judge HARDY filed a separate opinion concurring in the judgment.

———————

Chief Judge OHLSON delivered the opinion of the Court.

The Military Rules of Evidence (M.R.E.) prohibit a court-martial from considering an accused's admission or confession as evidence of guilt unless "independent evidence, either direct or circumstantial, has been admitted into evidence that would tend to establish the trustworthiness of the admission or confession." M.R.E. 304(c)(1) (2016 ed.). During two interviews with the United States Army Criminal Investigation Division (CID), Appellant made statements—which were referred to at trial as admissions or confessions—related to sexual abuse of his stepdaughter. Although there was no direct evidence of the alleged crime, the military judge concluded there was sufficient independent evidence to corroborate Appellant's confessions and admissions and therefore admitted those statements into evidence.

Subsequently, a panel with enlisted representation sitting as a general court-martial convicted Appellant of one specification of sexual abuse of a child in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b (2012). The United States Army Court of Criminal Appeals (ACCA) affirmed. We granted review to determine whether the military judge abused his discretion when he admitted Appellant's admissions and confessions.

We conclude the military judge did not err when he ruled that there were certain pieces of independent evidence that "raise[d] an inference of the truth of [Appellant's] admission[s] or confession[s]." M.R.E. 304(c)(2). We further conclude the military judge did not abuse his discretion when he ruled that these pieces of independent evidence, when considered together, "tend[ed] to establish the trustworthiness of [Appellant's] admission[s] or confession[s]" and admitted Appellant's statements into evidence. M.R.E. 304(c)(1). Accordingly, we affirm the decision of the ACCA.

## I. Background

### A. The Evidence of Sexual Abuse

At the time of the offense, Appellant was a Specialist (E-4) serving as a military police officer at Fort Drum, New York. In December 2017, Appellant married MM. MM and her eighteen-month-old daughter, EM, then moved in with Appellant. Appellant assisted in the care of EM, including bathing her, dressing her, and changing her diapers. In early 2018, Appellant made two sexually explicit comments about EM that the military judge found relevant to the charged offenses. On one occasion, when EM spilled milk on her face, Appellant said it looked like she had "cum dripping from her face." On another occasion, when EM put a toy carrot in her mouth, Appellant said it looked like she was "sucking a dick."

In August 2018, after the family moved to Appellant's new duty station in Germany, MM found pornography on Appellant's computer. Upset by what she found, MM confronted Appellant and he suggested that MM contact his team leader, Sergeant (SGT) KS. In this meeting, MM informed SGT KS that she wanted to go home to the United States and take EM with her so that Appellant could "get

help" without any distractions. Appellant later sent SGT KS the following text message:

> Hey sgt there is a real reason why my wife is leaving she believes that I sexually touched her daughter and as a concerned parent I believe that she needs to get tested for that I don't want risk of losing my job if it's true or not [sic]

Two minutes later, Appellant texted:

> And I would never do anything to hurt her daughter

SGT KS forwarded the texts to her command leadership, who then contacted CID. After CID began investigating, MM took EM to a physician for an examination to determine whether EM had been sexually abused. The examination was cut short because EM began crying, screaming, and lashing out. According to MM, EM "was very angry" and "didn't want anyone looking at her, touching her there." No evidence of sexual abuse was found during the portion of the exam that was completed. MM and EM then returned to the United States without Appellant.

CID interviewed Appellant twice. During the first interview, on August 18, 2018, Appellant admitted to having sexual urges toward EM. When discussing whether EM was safe around him, Appellant stated, "I mean yeah I'm going to have urges, but I just think that I need to stop it." Appellant also said he wanted to be away from EM to "prevent [himself] from touching her or thinking in a sexual way to[ward] her." In the same interview, Appellant denied touching EM sexually and agreed to a polygraph test to verify his statements.

On September 27, 2018, Appellant returned to CID for his polygraph examination, the results of which were inconclusive. During the interview, Appellant admitted that he sexually abused EM on two separate occasions. He specifically noted that the first instance occurred in EM's bedroom while he changed her diaper on top of a dresser that EM's grandfather had made. Appellant said that during this first instance of sexual abuse, he spread EM's labia with his hands and blew into her vagina. Appellant said that he did this "around the spring" in "either May or June" of 2018. Appellant stated that

he "was just curious," and then he "realized . . . this is not something [he] should be doing."[1]

## B. Consideration by the Military Judge

The Government charged Appellant with one specification of sexual abuse of a child in violation of Article 120b, UCMJ, for spreading EM's labia with his hands. Prior to his court-martial, Appellant objected to the introduction of three of his statements on the ground that the "independent evidence" did not "corroborate the Accused's admissions" under M.R.E. 304(c). Appellant sought to exclude: (1) the text messages he sent to his team leader; (2) the admissions he made about having "urges" toward EM in his first interview with CID; and (3) the confessions he made about sexually abusing EM in his second interview with CID.

Prior to ruling on Appellant's motion objecting to the introduction of his three statements under M.R.E. 304(c), the military judge ruled that Appellant's admissions to CID about his "urges" were admissible under M.R.E. 404(b) for the limited purpose of establishing Appellant's state of mind about EM and his intent. Appellant did not appeal the military judge's M.R.E. 404(b) ruling to either the ACCA or this Court.

Turning to Appellant's objections to the introduction of his statements under M.R.E. 304(c), the military judge denied the motion and admitted all three of them.

First, the military judge concluded that M.R.E. 304(c) did not apply to the text messages because those statements did not qualify as admissions or confessions. Nevertheless, out of an abundance of caution, the military judge further concluded that even if the texts were admissions or confessions, they would still be admissible under M.R.E. 304(c) because Appellant's statements in the texts were sufficiently corroborated

---

[1] Appellant stated that during the second instance of abuse, he penetrated EM's vagina with the tip of his pinky finger. Later in the interview, Appellant retracted this confession, stating that he had lied about digitally penetrating EM. He confirmed in the interview that he did spread EM's labia and blow into her vagina. For the alleged act of inserting his finger in EM's vagina, Appellant was charged with one specification of rape of a child and one specification of sexual abuse of a child, in violation of Article 120b, UCMJ, but the court-martial acquitted Appellant of this misconduct.

by the fact that MM was leaving Germany and that EM was taken to a doctor to determine whether she had been sexually abused. Appellant did not appeal this ruling to either the ACCA or this Court.

Second, the military judge turned to Appellant's admissions about having "urges" in his first interview with CID. Having already admitted those statements under M.R.E. 404(b), the military judge noted these statements did not need to be corroborated because they qualified as statements offered under a "Rule of Evidence other than [that] pertaining to the admissibility of the admissions or confessions" under M.R.E. 304(c)(3). He also ruled, in the alternative, that the "sexually charged statements" Appellant made about EM drinking milk and putting a toy carrot in her mouth were sufficient "independent evidence" to support the admissibility of the "urges" statement.

Third, the military judge ruled that the confessions of abuse Appellant made during the second CID interview were sufficiently corroborated. The military judge noted that (1) "after the time period of the charged offense, EM['s] behavior changed, where she would get naked, take off her diapers and poke objects and toys in her vagina"; (2) when describing the alleged offenses, Appellant specifically described the events as occurring in EM's bedroom "on the changing table and on a specific dresser made by the grandfather"; (3) Appellant had previously made "sexually charged statements" about EM in regard to the milk and the toy carrot.

## C. The Findings, Sentence, and Appellate Proceedings

On April 5, 2019, a panel with enlisted representation sitting as a general court-martial convicted Appellant, contrary to his plea, of one specification of sexual abuse of a child in violation of Article 120b, UCMJ. The panel sentenced Appellant to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

On appeal to the ACCA, Appellant challenged the military judge's denial of his motion to exclude his statements under M.R.E. 304(c). However, the lower court concluded that the

military judge did not abuse his discretion in overruling Appellant's objections. The ACCA affirmed the findings and only so much of the sentence as provided for a dishonorable discharge, confinement for four years and eleven months, forfeiture of all pay and allowances, and a reduction to E-1.[2] Upon appeal to this Court, we granted review of the following issue:

> Whether the military judge committed prejudicial error by admitting Appellant's statements to law enforcement in violation of Military Rule of Evidence 304(c).

*United States v. Whiteeyes*, 81 M.J. 161 (C.A.A.F. 2021) (order granting review).

## II. Standard of Review

This Court reviews a military judge's decision to admit a statement under M.R.E. 304(c) for an abuse of discretion. *United States v. Jones*, 78 M.J. 37, 41 (C.A.A.F. 2018).

## III. Applicable Law

### A. Overview

"It is a settled principle . . . that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." *Wong Sun v. United States*, 371 U.S. 471, 488–89 (1963). This principle is, in turn, based on the imperative "to prevent errors in convictions based upon untrue confessions alone," and on the knowledge arising from "judicial experience" that "[c]onfessions may be unreliable because they are coerced or induced." *Smith v. United States*, 348 U.S. 147, 153 (1954) (internal quotation marks omitted) (citations omitted); *see also Opper v. United States*, 348 U.S. 84, 89–90 (1954).

Consistent with this principle, a number of decades ago the President promulgated M.R.E. 304—a rule designed to ensure that "a conviction cannot be based solely on an uncor-

---

[2] The ACCA provided Appellant with thirty days of confinement relief to remedy the Government's dilatory post-trial processing. *United States v. Whiteeyes*, No. ARMY 20190221, 2020 CCA LEXIS 461, at \*18, 2020 WL 7384949, at \*8 (A. Ct. Crim. App. Dec. 15, 2020) (unpublished).

roborated, out-of-court admission or confession of the accused." *United States v. Yates*, 24 M.J. 114, 115 (C.M.A. 1987). This rule was specifically "intended to guard against" the admission at trial of "false or coerced confession[s]." *United States v. Arnold*, 61 M.J. 254, 257 (C.A.A.F. 2005); *see Yates*, 24 M.J. at 116 (noting that M.R.E. 304 was initially promulgated to "adopt[] the corroboration rule as set forth by the Supreme Court in *Opper* and *Smith*").

## B. M.R.E. 304

The version of the corroboration rule applicable to Appellant's case was promulgated in 2016. In this iteration, the President revised M.R.E. 304(c) for the express purpose of "bring[ing] military practice in line with federal practice." *Manual for Courts-Martial, United States*, Analysis of the Military Rules of Evidence app. 22 at A22-12 (2016 ed.) (citing *Opper*, 348 U.S. at 84; *Smith*, 348 U.S. at 147).[3] In relevant part, M.R.E. 304 states as follows:

> (c) Corroboration of a Confession or Admission.
>
> (1) An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been admitted into evidence that would tend to establish the trustworthiness of the admission or confession.
>
> (2) Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence. If the independent evidence raises an inference of the truth of the admission or confession, then it may be considered as evidence against the accused. Not every element or fact contained in the confession or admission must be independently proven for the

---

[3] In 2015, Congress directed the President to "modify Rule 304(c) of the Military Rules of Evidence" "[t]o the extent the President considers practicable, . . . to conform to the rules governing the admissibility of the corroboration of admissions and confessions in the trial of criminal cases in the United States district courts." National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114–92, § 545, 129 Stat. 726, 820 (2015).

confession or admission to be admitted into evidence in its entirety.

. . . .

(4) *Quantum of Evidence Needed*. The independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. The independent evidence need raise only an inference of the truth of the admission or confession. The amount and type of evidence introduced as corroboration is a factor to be considered by the trier of fact in determining the weight, if any, to be given to the admission or confession.

(5) *Procedure*. The military judge alone is to determine when adequate evidence of corroboration has been received. Corroborating evidence must be introduced before the admission or confession is introduced unless the military judge allows submission of such evidence subject to later corroboration.

As an initial matter, it is important to note that the corroboration rule outlined in M.R.E. 304 does not apply to all admissions or confessions of an accused. M.R.E. 304(c)(3) specifically states that corroboration is not required when an accused makes a statement at his own court-martial, when an accused makes a statement "prior to or contemporaneously with" the criminal conduct, or when the statement made by the accused is offered under a rule of evidence "other than that pertaining to the admissibility of admissions or confessions."

A second important preliminary point is that M.R.E. 304 controls the standards and procedures that a military judge must employ when deciding whether an admission or confession of an accused has been corroborated. Therefore, any elements of the common law doctrine of corpus delicti that conflict with the plain language of M.R.E. 304 must yield to the rule as promulgated by the President.

We also note at the outset that the language of M.R.E. 304 has changed over the years. Therefore, any case law regarding the proper application of the corroboration rule in M.R.E.

304 that is predicated on previous versions of the rule must be approached with caution.

## C. Procedures and Standards under M.R.E. 304(c)

Turning to the specific provisions of M.R.E. 304(c) as promulgated in 2016, an analysis of the language of the rule demonstrates that the following procedures and standards apply when a military judge is deciding whether an admission or a confession of an accused has been corroborated.

When the government seeks to introduce an admission or confession of an accused, it must proffer to the military judge evidence that it believes corroborates the accused's statement. Consistent with M.R.E. 104(b), the military judge may admit into evidence each piece of the proffered evidence on a conditional basis in order to make his or her M.R.E. 304(c) determination.[4]

In making this M.R.E. 304(c) determination, the military judge first must decide whether the proffered evidence is in fact "independent evidence." M.R.E. 304(c)(1). Independent evidence cannot consist of "[o]ther uncorroborated confessions or admissions of the accused that would themselves require corroboration." M.R.E. 304(c)(2). However, the independent evidence may be "either direct or circumstantial." M.R.E. 304(c)(1).

The military judge next must decide whether each piece of independent evidence "raises an inference of the truth of the admission or confession." M.R.E. 304(c)(2). If an individual piece of independent evidence meets this threshold, the military judge may then use that evidence in the process of determining whether the accused's statement is corroborated. A piece of independent evidence may reach this threshold even

---

[4] M.R.E. 104(b) states: "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The military judge may admit the proposed evidence on the condition that the proof be introduced later."

where it "raises an inference of the truth" only when considered alongside other independent evidence.[5]

The military judge finally must decide whether the pieces of independent evidence, considered together, corroborate the accused's admission or confession. In making this determination, the military judge must assess whether the pieces of independent evidence "would tend to establish the trustworthiness of the admission or confession." M.R.E. 304(c)(1).[6] If they do, the military judge will rule that the accused's statement is corroborated and will admit the statement into evidence. As a result, the trier of fact may consider the admission or confession "as evidence against the accused on the question of guilt or innocence." M.R.E. 304(c)(1). However, the trier of fact may also consider "[t]he amount and type of evidence introduced as corroboration . . . in determining the weight, if any, to be given to the admission or confession." M.R.E. 304(c)(4).

---

[5] For example, if an accused confessed to running a red light and colliding with another vehicle, a statement by a witness that the accused drives a blue car would not "raise[] an inference of the truth of the admission or confession." M.R.E. 304(c)(2). However, if another witness stated that the car that ran the red light was blue, this second statement would create the requisite connection between the first witness statement and the accused's confession.

[6] We underscore that the two quantum thresholds contained in M.R.E. 304 are low. First, in order for a military judge to consider a piece of proffered independent evidence for corroboration purposes, that evidence merely needs to "raise[] an inference of the truth of the admission or confession." M.R.E. 304(c)(2). Second, in order for a military judge to conclude that the independent evidence corroborates an accused's admission or confession, that evidence merely needs to "tend to establish the trustworthiness of the admission or confession." M.R.E. 304(c)(1). These low thresholds are consistent with prior decisions of this Court, wherein we characterized the required quantum of evidence as "slight." *Jones*, 78 M.J. at 42 (internal quotation marks omitted) (citation omitted); *United States v. Melvin*, 26 M.J. 145, 146 (C.M.A. 1988) (citation omitted); *United States v. Yeoman*, 25 M.J. 1, 4 (C.M.A. 1987) (internal quotation marks omitted) (citation omitted). Therefore, these precedents retain their value as examples of evidence that would meet the low threshold as specifically articulated in the text of the 2016 amendments to M.R.E. 304.

## IV. Analysis

Prior to trial, Appellant made a written motion objecting to the introduction into evidence of three of his statements pursuant to M.R.E. 304(c): (1) the text messages he sent to his team leader about why his wife wanted to move back to the United States; (2) the August 18, 2018, admissions he made to CID about having "urges" toward EM; and (3) the September 27, 2018, confessions he made to CID about sexually abusing EM. As noted above, Appellant does not challenge on appeal the admission of his statement to his team leader. Therefore, we consider only Appellant's statements to CID.

The military judge overruled Appellant's objection to the admission of the August 18, 2018, statements regarding Appellant's "urges." Specifically, the military judge found that Appellant's "sexually charged" statements about EM drinking milk and playing with a toy carrot corroborated his "urges" admissions. In regard to Appellant's September 27, 2018, confessions, the military judge found the following independent evidence corroborated the accused's statements: (1) EM's behavioral changes after she was allegedly sexually abused by the accused, which included EM "pok[ing] objects and toys in[to] her vagina"; (2) the accused's description of the location of the offense, which was in EM's bedroom on a changing table that was distinctive because it was "made by the grandfather"; and (3) the sexually charged comments Appellant made about EM, such as "the milk running down her face . . . looked like cum was dripping down her face," and "when she was sticking a carrot in her mouth, it looked like . . . she was sucking a penis." As we will explain below, the military judge did not abuse his discretion in finding that the September 27 confessions and the August 18 admissions were corroborated.

## A. September 27, 2018 Confessions

First, we must decide whether the military judge erred in ruling that the three pieces of evidence cited above constituted "*independent* evidence" as provided in M.R.E. 304(c)(1) (emphasis added). We conclude that he did not. None of this evidence consisted of "[o]ther uncorroborated confessions or admissions of the accused that would themselves require corroboration." M.R.E. 304(c)(2).

Second, we must decide whether the military judge erred in ruling that this evidence "raise[d] an inference of the truth of the admission or confession," and that this evidence could therefore be considered by him when deciding whether Appellant's statements were corroborated. M.R.E. 304(c)(2). Again, we conclude that he did not.

In regard to the behavioral changes, as Appellant has noted before this Court, an expert witness for the defense testified that medical experts "consider playing with one's genitals to be developmentally normal" for a child EM's age. The defense expert witness also testified: "We know that there's an increased amount of sexual behavior . . . when a parental love leaves the family" such as when the accused was no longer in proximity to EM. This witness further stated: "We also know that there's an increased amount of sexual behavior when there's [a] move[]" such as when EM and her mother moved back to the United States.

As the Government explains in its brief, however, this expert also testified that EM's conduct of inserting toys into her vagina was "concerning" and that "insertion of toys . . . done in a repetitive nature, and done frequently, [constitutes] problematic sexual behavior." Although the expert stated that he "would be very cautious in interpreting that [EM was] sexually abused" and that it would be "inappropriate, just from that behavior itself, to determine that [EM] had been sexually abused," he also stated that he "would have to look into it" and refused defense counsel's invitation to definitively state that EM's behavioral changes were not the result of sexual abuse. Under these circumstances, we conclude that the military judge did not err in deciding that the behavioral changes in EM "raise[d] an inference of the truth of the [accused's] admission or confession" and could be considered when deciding whether Appellant's statements were corroborated. M.R.E. 304(c)(2).

In regard to the description of the location of the offense, we have some reservations about the degree to which Appellant's description of the changing table raised an inference of the truth of his confessions. EM's mother acknowledged in court that Appellant assisted in the care of EM, to include bathing her, dressing her, and changing her diapers. There-

fore, at first blush, there does not seem to be anything remarkable about Appellant's ability to describe the room and changing table upon which both the diaper-changing and the sexual abuse occurred.

We note, however, that during her testimony, EM's mother testified that the dresser "moved multiple times" during their stay, but indicated that at the time of the alleged abuse it was in the specific room identified by Appellant in his statement to CID. Although it is a close call, we conclude that the military judge did not err in ruling that Appellant's description of the location of the offense at least raised an *inference* of the truth of his confessions and thus was a proper subject for his consideration when deciding whether Appellant's statements were corroborated.

In regard to the comments Appellant made about EM when she spilled milk on her face and when she had a toy carrot in her mouth, Appellant now attempts to portray these comments as merely "boorish, uncouth, . . . inappropriate," and "immature" but lacking in "corroborative value." Brief for Appellant at 37–38, *United States v. Whiteeyes*, No. 21-0120 (C.A.A.F. Apr. 5, 2021). However, the military judge specifically found that Appellant's comments about this young child were "sexually charged." We find no basis in the record to dispute this finding. It is not unreasonable to believe—as the military judge apparently did—that such sexually charged comments suggested that Appellant perceived EM in sexual terms. Therefore, we conclude that the military judge did not err in ruling that Appellant's sexually charged comments about EM raised an inference of the truth of his confessions and thus could be considered when deciding whether Appellant's confessions were corroborated.

Third and finally, we must decide whether the military judge abused his discretion in deciding that, cumulatively, this independent evidence "tend[s] to establish the trustworthiness of the admission or confession." M.R.E. 304(c)(1). Once more, we conclude that he did not. The combined independent evidence consisting of EM's behavioral changes, the accused's description of the location of the offense, and the sexually charged comments Appellant made about EM provided sufficient corroboration of Appellant's confessions. Accordingly, the military judge correctly ruled that the panel

could consider those statements "as evidence against the accused on the question of guilt or innocence." M.R.E. 304(c)(1).

## B. August 18, 2018 Admissions

The parties' arguments give rise to three distinct issues with respect to Appellant's August 18, 2018, CID statements about "urges": (1) whether a statement admitted under M.R.E. 404(b) can be used as independent evidence for corroboration purposes under M.R.E. 304(c); (2) whether these statements needed to be corroborated at all where the military judge admitted them under M.R.E. 404(b); and (3) whether these statements were sufficiently corroborated so that they could be admitted into evidence.[7]

We need not reach the issue of whether Appellant's August 18, 2018, statements to CID about his "urges"—which were admitted by the military judge under M.R.E. 404(b)— could be used as independent evidence. Nor do we need to resolve the issue of whether these statements themselves needed to be corroborated by independent evidence. Rather, it is sufficient for purposes of deciding this appeal merely to address the third issue raised by the parties. Upon doing so, we conclude that the military judge did not abuse his discretion when he ruled that Appellant's sexually charged comments about the child victim were sufficient—standing alone—to corroborate his August 18, 2018, "urges" admissions.

## V. Judgment

We hold that the military judge did not abuse his discretion in admitting either Appellant's September 27, 2018, or August 18, 2018, statements to law enforcement. The decision of the United States Army Court of Criminal Appeals is therefore affirmed.

---

[7] M.R.E. 304(c)(3) provides that "[c]orroboration is not required . . . for statements offered under a rule of evidence other than that pertaining to the admissibility of admissions or confessions."

Judge HARDY, concurring in the judgment.

I agree that the military judge did not abuse his discretion in ruling that Appellant's confession was properly corroborated under Military Rule of Evidence (M.R.E.) 304(c). I write separately because I find the independent corroborating evidence relied upon by the majority to be lacking, and thus cannot answer the question presented without also considering the legal puzzle that has been lurking—unaddressed—at every stage of this case: whether evidence of Appellant's motive and intent admitted under M.R.E. 404(b) can be used to corroborate Appellant's confession under M.R.E. 304(c). For the reasons stated below, I believe that it can.

## I. The Corpus Delicti Doctrine

Appellant's arguments rely heavily on the common law doctrine of corpus delicti,[1] rather than specifically on the text of M.R.E. 304. The majority properly focuses its analysis on the text of the rule, which I agree governs the outcome of this case. Nevertheless, given Appellant's arguments and the fact that Congress expressly directed the President to make M.R.E. 304 consistent with the Supreme Court's decisions interpreting the common law doctrine, *see* National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114–92, § 545, 129 Stat. 726, 820 (2015) ("To the extent the President considers practicable, the President shall modify Rule 304(c) of the Military Rules of Evidence to conform to the rules governing the admissibility of the corroboration of admissions and confessions in the trial of criminal cases in the United States district courts."), it is a worthwhile diversion to examine the background of the corpus delicti doctrine.

In the western legal tradition, the requirement of corroborating a confession before it can be introduced as evidence can be traced back to at least the seventeenth century. In its original form, the rule required introduction of some independent evidence of the corpus delicti. The traditional example used to justify the corpus delicti rule comes from *Perry's Case* (1660), 14 T.B. Howell, *A Complete Collection of State Trials* 1312 (1816). In that case, after an elderly man disappeared, the man's servant was convicted and executed for murder based solely on

---

[1] "Corpus delicti" is Latin for "body of the crime" and "reflects the simple principle that a crime must be proved to have occurred before anyone can be convicted for having committed it." *Black's Law Dictionary* 433 (11th ed. 2019).

the servant's confession. The dangers of relying on an uncorroborated confession were demonstrated when the elderly man resurfaced—very much alive—a few years later. In response to similar cases, Matthew Hale, who had formerly been Chief Justice of the King's Bench, explained, "I would never convict any person of murder or manslaughter, unless the fact were proven to be done, or at least the body found dead." 2 Matthew Hale, *The History of the Pleas of the Crown* 290 (W.A. Stokes & E. Ingersoll eds., Robert H. Small 1847) (1736).

A subsequent case involving two brothers and their brother-in-law, *The Trial of Stephen and Jesse Boorn* (1819), 6 *American State Trials* 73 (John D. Lawson ed., 1916) (*Boorn*), prompted the broad adoption of the corpus delicti rule in the United States. In *Boorn*, after their brother-in-law disappeared, the first brother implicated the second brother, who then confessed to killing the brother-in-law to avoid the death penalty. *Id*. at 73–76. Both brothers were convicted of murder based only on the second brother's confession, but they were eventually exonerated, when the brother-in-law turned up alive. *Id*. at 77, 92–94. By the end of the nineteenth century, almost every jurisdiction in the United States adopted either the corpus delicti rule or a similar corroboration requirement. *See* Thomas A. Mullen, *Rule Without Reason: Requiring Independent Proof of the Corpus Delicti As a Condition of Admitting an Extrajudicial Confession*, 27 U.S.F. L. Rev. 385, 401 (1993).

The Supreme Court significantly undercut the application of the corpus delicti rule when it decided companion cases *Opper v. United States*, 348 U.S. 84 (1954), and *Smith v. United States*, 348 U.S. 147 (1954). In *Opper*, the Supreme Court held that independent evidence corroborating a confession need not establish the corpus delicti of the crime, but instead need only "tend to establish the trustworthiness of the [confession]." 348 U.S. at 93. In *Smith*, the Supreme Court further explained, "[a]ll elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense through the statements of the accused." 348 U.S. at 156 (internal quotation marks omitted). The Supreme Court then acknowledged, "because this rule does infringe on the . . . primary finder of facts, its application should be scrutinized lest the restrictions it imposes surpass the dangers which gave rise to them." *Id.* at 197–98.

In 1951, the President incorporated the principles underlying the corpus delicti doctrine into the military justice system by including in

the *Manual for Courts-Martial, United States* (*MCM*), a rule describing when an accused's admissions or confessions could be admitted. *See MCM* ch. XXVII, para. 140.*a.* (1951 ed.) ("A court may not consider the confession or admission of an accused as evidence against him unless there is in the record other evidence, either direct or circumstantial, that the offense charged had probably been committed by someone."). Although that rule (now appearing in the *MCM* as M.R.E. 304(c)), has had a byzantine and fascinating history over the intervening decades,[2] this case only requires consideration of the version of the rule promulgated by the President in 2016. Consistent with the Supreme Court's decisions in *Opper* and *Smith*, that rule states:

> An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been admitted into evidence that would *tend to establish the trustworthiness of the admission or confession.*

M.R.E. 304(c)(1) (emphasis added). The rule defines the quantum of evidence necessary to "tend to establish trustworthiness" of a confession or admission as follows:

> The independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. *The independent evidence need raise only an inference of the truth of the admission or confession*.

M.R.E. 304(c)(4) (emphasis added).

It is worth noting that divisions exist among the federal and state courts about how the corpus delicti doctrine applies. In some jurisdictions, the doctrine governs the admissibility of confessions into evidence, while in other jurisdictions, it addresses the sufficiency of a confession to prove guilt. 1 *McCormick on Evidence* § 145 (Robert P. Mosteller ed., 8th ed., 2020). Based on the President's decision to incorporate the doctrine as a M.R.E., the modern military justice system follows the evidentiary approach. There can be no doubt that M.R.E. 304(c) governs the admissibility of confessions and admissions into ev-

---

[2] *See generally* Seth M. Engel, *Military Law—Redefining Corroboration: The History, Intent, and Effect of Congress's Direction to Change How Confessions Are Corroborated in Military Courts*, 41 W. New Eng. L. Rev. 219 (2019).

idence rather than the sufficiency of a confession. In contrast, the Federal Rules of Evidence contain no provision comparable to M.R.E. 304(c). Accordingly, most Article III federal courts treat the corpus delicti principle as a substantive federal common law rule addressing the weight of confessions rather than their admissibility. *See* Charles A. Wright et al., 22A Federal Practice and Procedure: Evidence § 5200 (2d ed. Apr. 2021).

Other courts also disagree about what the independent corroborating evidence must show. Some jurisdictions require the corroborating evidence to be evidence of the charged crime. 1 *McCormick on Evid*ence, *supra* at § 146. In contrast, other jurisdictions require the corroborating evidence to support the truthfulness of a confession. *Id.* § 147. Military Rule of Evidence 304(c)(4) takes the truthfulness approach set forth by the Supreme Court in *Opper*, specifying that "independent evidence need raise only an inference of the truth of the admission or confession." *See generally* 1 *McCormick on Evidence, supra*, at § 147.

Thus, pursuant to the plain text of M.R.E. 304, the Court must decide only whether the military judge abused his discretion when he concluded that there was sufficient independent evidence to raise "only an inference of the truth" of Appellant's admissions such that those admissions could be considered trustworthy and admitted as evidence of Appellant's guilt.

## II. Independent Evidence of the Alleged Offense

Due to the nature of the alleged sexual abuse and EM's young age, the Government was unable to offer any direct evidence of Appellant's offense. In the absence of any such evidence, the military judge held that three pieces of indirect evidence tended to establish the trustworthiness of Appellant's confessions and admissions: (1) Appellant's lewd comments about EM prior to the alleged abuse; (2) EM's behavioral changes after the alleged abuse; and (3) Appellant's specific descriptions of the location of the alleged abuse. *United States v. Whiteeyes*, No. ARMY 20190221, 2020 CCA LEXIS 461, at *9–10, 2020 WL 7384949, at *4 (A. Ct. Crim. App. Dec. 15, 2020) (unpublished). Unlike the majority, I cannot agree that this evidence, without more, is sufficient to corroborate Appellant's confession.

### A. Lewd Comments

During the pretrial hearing for Appellant's motion to suppress, his then-wife MM testified that Appellant made several lewd comments

about EM prior to the alleged sexual abuse. First, when EM spilled milk on her face, Appellant said it looked like she had "cum dripping from her face." Later, when EM put a toy carrot in her mouth, Appellant said it looked like she was "sucking a dick." The military judge pointed to these statements as independent facts that corroborated the trustworthiness of Appellant's admissions that he sexually abused EM. On appeal, the ACCA went a step further and stated, "[s]tanding alone, appellant's sexually charged comments about [EM] drinking milk and eating a carrot satisfy the 'very slight' quantum of corroborating evidence to establish the reliability of all the admissions at issue." *Whiteeyes*, 2020 CCA LEXIS 461, at \*10–11, 2020 WL 7384949, at \*5 (citing *Jones*, 78 M.J. at 42). Although Appellant's comments about EM are no doubt vulgar and tasteless, I disagree that they offer much, if any, corroboration of sexual assault.

The fact that Appellant made two inappropriate comments to his then-wife provides little independent evidence of the trustworthiness of his confession to sexually abusing EM. Even though Appellant's comments were about the victim, I believe the statements were too attenuated from the alleged misconduct to offer the quantum of independent evidence required by M.R.E. 304(c)(4) to corroborate a confession.

## B. EM's Behavioral Changes

During the motions hearing on Appellant's motion to dismiss, Appellant's then-wife described how EM's behavior changed after the alleged sexual abuse. As the military judge explained in his ruling on the motion, "after the time period of the charged offense, E.M.['s] behavior changed, where she would get naked, take off her diapers and poke objects and toys in her vagina." The military judge held that this was one of the independent facts that corroborated Appellant's confession. Again, I disagree.

I believe that the changes in EM's behavior provide little value in deciding whether Appellant's confession was sufficiently corroborated by independent facts. An expert witness testifying on behalf of the defense provided unrebutted testimony that, "[medical experts] consider playing with one's genitals to be developmentally normal [for a child EM's age]." He also stated that two factors besides the alleged sexual abuse could have caused EM's changed behavior: (1) Appellant, who had been a father figure to EM, was no longer in the family, and (2) EM and her mother moved from Germany back to the United States. The expert witness clarified, "We know that there's an increased amount of sexual behavior, when a parental love leaves the family. We also know

5

that there's an increased amount of sexual behavior when there's moves." He later stated, "it would be inappropriate, just from that behavior itself, to determine that [EM] had been sexually abused."

Although the military judge did not have the benefit of the expert witness' testimony when he ruled on Appellant's motion because the expert did not testify until the evidence phase of the court-martial, the expert testimony is properly included in the joint appendix and can be considered by this Court. Per that testimony, not only was EM's behavior normal, but even if the behavior was abnormal, two other present factors are known to be correlated with this type of the behavioral change. In these circumstances, and in light of the unrebutted expert testimony, I cannot say that EM's alleged changed behavior provides any degree of corroboration that would lead one to believe Appellant's confession was trustworthy.

### C. Description of Where the Abuse Occurred

In Appellant's second CID interview, he confessed that he sexually abused EM in her bedroom while he changed her diaper on top of a specific dresser. Appellant's then-wife MM testified that, although the family moved that particular dresser around their house, the dresser was in EM's room in May 2018, when Appellant confessed to sexually abusing EM.

When determining whether evidence tends to establish the trustworthiness of a confession, a relevant consideration is the specificity of corroborating evidence, including specific information, such as when and where the abuse took place. *See United States v. Arno*, No. ARMY Misc. 20180699, 2019 CCA LEXIS 86, at *5, 2019 WL 990799, at *2 (A. Ct. Crim. App. Feb. 26, 2019) (per curiam) (unpublished) ("When an accused confesses to committing a certain crime in a certain place in a certain manner, evidence that the accused was actually at that place, and had the specific motive to commit that crime, can be considered when determining whether the confession is trustworthy."). Appellant gave a detailed explanation of the place and way he committed the sexual abuse rather than merely admitting that the abuse took place. But, as the majority notes, there does not seem to be anything remarkable about Appellant's ability to describe the room where he frequently changed the victim's diapers.

### D. Statements about "Urges"

Finding little corroborative value in the three pieces of evidence relied upon by the courts below, I turn finally to what I believe is the

6

most compelling evidence in the record, Appellant's statements about his sexual urges toward EM during his first CID interview. When discussing whether EM was safe around him, Appellant stated, "I mean yeah I'm going to have urges, but I just think that I need to stop it." Appellant also said he wanted to be away from EM to "prevent [himself] from touching her or thinking in a sexual way to [sic] her."

These statements provide strong independent evidence that would tend to corroborate Appellant's admissions about his sexual abuse of EM. Yet even though the military judge admitted these statements as evidence of Appellant's motive or intent under M.R.E. 404(b)—and thus they would require no independent corroboration as "statements offered under a rule of evidence other than that pertaining to the admissibility of admissions or confessions" under M.R.E. 304(c)(3)—the military judge declined to consider those statements in his M.R.E. 304(c) analysis for Appellant's other admissions. The military judge's hesitance presumably arose from his uncertainly about whether an admission admitted for the limited purposes of proving intent or motive under M.R.E. 404(b)—but therefore expressly prohibited from being considered by the panel as evidence of Appellant's guilt under M.R.E. 404(b)(1)—could be used as independent corroborating evidence for other admissions as part of the court's M.R.E. 304(c) analysis. I believe that it can.

Appellant's admissions to CID would be admissible evidence unless those admissions were barred due to lack of corroboration by the operation of M.R.E. 304(c)(1). But the plain text of M.R.E. 302(c)(3) states that no corroboration of admissions is required "for statements offered under a rule of evidence other than that pertaining to the admissibility of admissions or confessions," and M.R.E. 404(b) is not such a rule. The military judge admitted Appellant's statements about his urges as "evidence" under M.R.E. 404(b) to establish Appellant's motive and intent. I see no reason, under the M.R.E., why admitted evidence of Appellant's motive and intent cannot *also* provide an indicia of trustworthiness that corroborates Appellant's other admissions under M.R.E. 304(c). Indeed, the fact that Appellant had sexual motives and intent toward EM provides far more convincing corroboration for his confession to sexually abusing EM than any of the other evidence proffered by the Government.

Appellant argues that the doctrine of corpus delicti prohibits one admission from ever being used to corroborate another admission. But the military justice system does not follow the absolute rule that

Appellant asserts. Instead, the President has long elected to incorporate the concepts that motivate the corpus delicti doctrine as an evidentiary rule. And while it is true that Congress directed the President to conform M.R.E. 304(c), to the extent practicable, with the way the federal courts apply the corpus delicti doctrine, that does not change the fact that this case is governed by a specific rule of evidence instead of by an amorphous common law doctrine. Accordingly, I would hold that evidence otherwise admitted under a "rule of evidence other than that pertaining to the admissibility of admissions or confessions"—including M.R.E. 404(b)—may be used to corroborate an accused's admissions or confessions under M.R.E. 304(c).

Appellant's statements about having "urges" toward EM raise a strong inference of the trustworthiness of his confession and other admissions. The statements suggest: (1) that Appellant viewed EM in a sexual way; (2) that Appellant's ongoing state of mind included sexual urges toward EM; and (3) that Appellant's urges toward EM were palpable enough for him to feel he should not be near her. This raises an inference that he acted on those "urges," and tends to establish that his confession to having sexually abused EM was trustworthy.

### III. Conclusion

Pursuant to M.R.E. 304(c)(4), there is sufficient independent evidence to corroborate an accused's admissions if that evidence "raise[s] only an inference of the truth" of those admissions. Based on all of the independent evidence in this case—including the evidence about Appellant's urges admitted under M.R.E. 404(b)—I agree that the military judge did not abuse his discretion in holding that the independent facts tended to "raise . . . an inference of the truth of the admission or confession." M.R.E. 304(c)(4). Like my colleagues, I would affirm the decision of the United States Army Court of Criminal Appeals.